STATE ex rel. Tracy McKEE,
Petitioner,

v.

The Honorable John J. RILEY,
et al., Respondents.

No. SC 88867.

Supreme Court of Missouri,
En Banc.

Dec. 21, 2007.

Maleaner R. Harvey, Courtney M. Harness, Office of the Public Defender, St. Louis, for petitioner.

Jennifer M. Joyce, Charles W. Billings, Office of the Circuit Attorney, St. Louis, for respondents.

## ORIGINAL PROCEEDING IN MANDAMUS

LAURA DENVIR STITH, Judge.

Petitioner Tracy McKee seeks a writ of mandamus directing the trial court to dismiss the indictment pending against him with prejudice on grounds that the failure to try him for over 18 months following his arrest violates his constitutional right to a speedy trial under the sixth and fourteenth amendments to the United States Constitution and under article I, section 18(a) of the Missouri Constitution, as well as his statutory right to a speedy trial under section 545.780, RSMo 2000.[1] Mr. McKee asserted these rights in various *pro se*

motions for speedy trial and in a *pro se* motion to dismiss, although represented by counsel from the office of the public defender.

This Court rejects Mr. McKee's claim that his continued prosecution violates section 545.780. That statute supplements the constitutional right to a speedy trial by declaring that a case shall be set for trial as soon as possible after defendant announces ready for trial and files a request for speedy trial. Where, as here, a defendant is represented by counsel, however, it is counsel who will try the case and, therefore, only counsel who can declare that the defense is "ready for trial."

The same is not true of Mr. McKee's *pro se* invocation of his constitutional right to a speedy trial. That right is personal to a defendant and may be asserted by a defendant *pro se* even when, as in this case, defendant is represented by counsel. The trial court, and counsel for Mr. McKee and for the State, erred in simply ignoring Mr. McKee's repeated motions asserting his constitutional right to a speedy trial. Mere delay accompanied by an assertion of one's right to a speedy trial is insufficient to entitle one to dismissal, however. A defendant also must show that the defense is not unduly responsible for the delay and that the delay has caused prejudice to the defendant. Here, the record does not sufficiently elucidate the reasons for the delays nor does it disclose the extent and nature of prejudice to the defendant. Accordingly, the Court issues a peremptory writ of mandamus, directing the trial court: (1) to immediately hold a hearing to determine whether the conditions placed upon Mr. McKee's release at the time of his arrest pursuant to Rule 33.01 remain appropriate,[2] and (2) to hold a hearing

---

1. Unless stated otherwise, all subsequent statutory references are to RSMo 2000.

2. Rule 33.06 allows the trial court to "modify the requirements for release."

within seven days of the issuance of this Court's mandate to determine whether Mr. McKee's constitutional right to a speedy trial has been violated. If the trial court finds that his speedy trial right has been violated, the charges against Mr. McKee shall be immediately dismissed. If the trial court concludes otherwise, Mr. McKee shall be brought to trial as soon as practicable, but *in no event* more than thirty days after the hearing on his motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The record indicates that Mr. McKee is 42 years old and was unemployed and homeless when he was arrested on June 4, 2006. He was charged with six crimes related to three alleged incidents of tampering with motor vehicles. More specifically, the state has charged that on June 16, 2005, Mr. McKee defaced a 2000 Nissan Maxima[3] and pushed security officer Beverly Black, resulting in a felony charge of first-degree tampering and a misdemeanor charge of third-degree assault. Then, on March 27, 2006, Mr. McKee allegedly entered unlawfully into a building owned by Interpark and fled from a police officer, resulting in misdemeanor charges of trespassing and resisting arrest. Finally on June 4, 2006, Mr. McKee allegedly broke out the passenger window of a 2004 Ford Excursion and stole items over $500 in value, resulting in his arrest on a charge of felony stealing and a misdemeanor charge of second-degree property damage.[4] Bond was set at $20,000 cash, which could be satisfied with $1000 cash and either $19,000 secured or 10 percent. Mr. McKee was unable to make bond.

The public defender was appointed to represent Mr. McKee on June 6, 2006, two days after his arrest. On June 6, 2006, the cause was continued until July 19 at the request of the state, but the record does not state a reason for this continuance. On July 19, the cause was continued until August 23 at the request of the state, but again, the record does not state a reason for this continuance.[5]

The state presented the six charges set forth above to a grand jury in August 2006. The grand jury returned an indictment on the tampering charge and on the four misdemeanor charges, but it determined that there was insufficient evidence to support an indictment on the stealing charge, so that count was dismissed. On August 23, 2006, the cause was continued until September 13, 2006, at the request of the court.[6] On September 13, Mr. McKee was arraigned on the charges in the grand jury indictment. After pleading not guilty,

---

3. The prosecuting attorney filed a superseding information on January 31, 2007, which amended the tampering count to allege tampering with a 2000 Nissan Maxima instead of a 2004 Ford Excursion. The superseding information was identical to the indictment in all other material respects.

4. More specifically, Mr. McKee was accused of violating sec. 569.080 (first-degree tampering), sec. 570.030 (felony stealing over $500), sec. 565.070 (third-degree assault), sec. 575.150 (resisting arrest), sec. 569.120 (second-degree property damage), and sec. 569.140 (first-degree trespass).

5. These continuances were made on preprinted order forms that provide several inches of blank space to provide reasons for the continuance. Neither these continuances at the state's request nor most of those continuances at the court's request, addressed *infra*, provide such reasons. To the extent that the state now asserts some of those continuances are attributable to the defendant's conduct, those reasons ought to have been reflected in the order of continuance in the first instance.

6. The reasons given for this continuance are "Indictment filed," and the continuance also notes, "Bring Back Early."

the cause was assigned for an initial appearance in Division 16 on October 5, 2006. The October 5, 2006, hearing was "Continued/Rescheduled" for reasons that are not reflected in the docket sheets or the record submitted by the parties.[7]

In September 2006, shortly after his arraignment, Mr. McKee filed his first *pro se* motion for a speedy trial, alleging that he had been in custody for 100 days without trial and that further delay would have an "adverse impact on the defendant due to stressful incarceration conditions" and would undermine his ability to have a fair trial. That motion was accepted for filing by the trial court, and no motion to strike was filed by the circuit attorney opposing its filing on the ground, now asserted on appeal, that he had no right to file such a *pro se* motion because he was represented by counsel.

In October 2006, the public defender assigned a new attorney to Mr. McKee. On November 15, 2006, the case was set for trial to begin on January 29, 2007. On December 4, 2006, the prosecuting attorney sent a letter to counsel for Mr. McKee indicating the state's belief that five years would be an appropriate disposition of the charges if Mr. McKee were interested in pleading guilty.

The January 29, 2007, trial date was not kept. The parties suggest this was due to a failed plea agreement, but if so, no record was made to that effect in the trial court. This Court, like all appellate courts, is guided by the record, and neither the record nor the docket indicates what, if anything, occurred on January 29. The record does disclose that the prosecutor filed a superseding information on January 31, 2007, which amended the June 2005 tampering count (the only felony charge in the case) to allege tampering with a 2000 Nissan Maxima rather than a 2004 Ford Excursion. The superseding information was identical to the indictment in all other material respects. On February 9, 2007, the cause was continued (in an unsigned order) to April 30, 2007. As with most of the previous continuances, the record does not disclose a reason for this continuance other than that it was made at the request of the court. On April 17, 2007, the state issued at least four subpoenas for witnesses to testify at the April 30 trial date.

On April 27, the Friday before the April 30 trial date, Mr. McKee filed a letter with the court that notes he has "been incarcerated for 11 months and has yet to be brought to trial after having requested and answered ready many times." In this letter, Mr. McKee also requested discovery of certain items that he believed were pertinent to his defense. Although witnesses had been subpoenaed to testify, the April 30 trial date passed without even a docket entry reflecting that anything occurred in the case. Apparently some continuance was granted without record entry, for a letter from Mr. McKee that was filed on May 3 notes that his "most recent missed court date for trial was 04–30–07 again of no reason or cause of my own nor for any good cause of the state." Mr. McKee's May 3 letter again notes that he has been incarcerated for 11 months and has yet to be brought to trial "after having requested many times for a fast speedy trial." The conclusion of Mr. McKee's May 3 letter reads: "At this point I wish to file a motion to dismiss, pro-se if need be, and I request your powers and judgement to rule on this motion please. I intend to stand before your court soon for trial."

7. The docket reflects a *pro se* motion for speedy trial on September 13, 2006, but the motion itself states in its certificate of service that it was mailed on September 15, and the file stamp reads September 19, 2006. Although the difference is immaterial in this case, the discrepancy between docket entries and filing dates is troublesome.

On May 9, 2007, a docket entry reflects that the cause was reset for July 2, 2007. The record contains no further information about this continuance. This continuance prompted another *pro se* motion for a speedy trial from Mr. McKee, filed on May 22, 2007. This motion invoked Mr. McKee's state and federal constitutional rights to a speedy trial and requested the sanction of dismissal. It notes that Mr. McKee has had "numerous employment opportunities" that "have been put on hold pending completion and final disposition of this cause, which places hardship on the defendant's family." Like Mr. McKee's previous motion for speedy trial, this motion was accepted for filing without opposition by the circuit attorney, but the trial court took no action on it nor did his counsel call it up for hearing. It simply sat, ignored, in the case file.

On July 11, 2007, a docket entry reflects that the July 2 hearing was "Continued/Rescheduled" to September 20, 2007. The record contains no further information about this continuance. Also on July 11, a "Plea/Trial Setting" was scheduled for August 13, 2007. Mr. McKee filed a third *pro se* motion for a speedy trial on July 18, 2007. In this motion, which was filed on a prepared form, Mr. McKee asserted that his statutory and constitutional rights to a speedy trial were being infringed, and he sought an evidentiary hearing to prove his claim. Mr. McKee also filed an offer to plead guilty to the lesser charge of tampering in the second degree on July 18, 2007.

There is no information in the record supplied to indicate whether the August 13, 2007, plea/trial setting was kept or, if it was continued, the reasons for the continuance. The record does reflect, though, that on August 14 Mr. McKee filed a *pro se* motion to dismiss the pending charges for a violation of his statutory and consti-

tutional rights to a speedy trial. Again, although both the July 18 and August 14 motions were filed without opposition, neither of these motions were addressed by the trial court or by counsel.

On September 20, 2007, a docket entry reflects the cause was "continued/rescheduled" to October 17, with a "Plea/Trial setting" on October 9. According to the docket, nothing took place on October 9 in Mr. McKee's case. On October 17, a docket entry reflects that the cause was "Continued/Rescheduled" to December 3 for trial. The record does not disclose a reason for either of these continuances.

Since the trial court took no action on Mr. McKee's motions to dismiss and for a speedy trial, Mr. McKee sought a writ of mandamus directing the trial court to dismiss the charges against him for violation of his statutory and constitutional rights to a speedy trial. This Court issued an alternative writ of mandamus.

## II. STANDARD OF REVIEW

■ This Court has the authority to "issue and determine original remedial writs." Mo. Const. art. V, sec. 4.1. It issues a writ of mandamus "to compel the performance of a ministerial duty that one charged with the duty has refused to perform." *Furlong Cos. v. City of Kansas City*, 189 S.W.3d 157, 165–66 (Mo. banc 2006). "A litigant asking relief by mandamus must allege and prove that he has a clear, unequivocal, specific right to a thing claimed." *Id.* at 166. The speedy trial statute specifically allows that "the provisions of this section shall be enforceable by mandamus." Sec. 545.780(2).

## III. RIGHT OF A REPRESENTED DEFENDANT TO FILE PRO SE MOTION ALLEGING VIOLATION OF SPEEDY TRIAL RIGHTS

Mr. McKee alleges violation of his statutory right to speedy trial under section

545.780, violation of his constitutional right to "a speedy and public trial" under U.S. Const. amend. VI and violation of the promise of Mo. Const. art. I, sec. 18(a) that "the accused shall have the right to . . . a speedy public trial".

■ Respondent argues that this Court should not reach the merits of Mr. McKee's speedy trial claims because they were asserted in *pro se* motions by a defendant who was represented by counsel. In general, one must choose between self-representation and representation by counsel. As this Court recently noted, once the right to counsel is invoked, a defendant "effectively cede[s] to his counsel the authority to seek reasonable continuances." *State ex rel. Wolfrum v. Wiesman*, 225 S.W.3d 409, 412 (Mo. banc 2007); *accord State v. Williams*, 34 S.W.3d 440, 442 (Mo.App. S.D.2001) ("defendant . . . has no right to . . . a combination of self-representation and assistance of counsel").[8]

Here, because Mr. McKee had counsel, but counsel never filed a speedy trial motion or called Mr. McKee's *pro se* motions up for hearing, Respondent argues the trial court never became obligated to address the motions in the first instance. By extension, Respondent argues that it would be inappropriate for this Court to issue a writ of mandamus. Since the right to a speedy trial has both statutory and constitutional origins, the Court will address whether Mr. McKee's *pro se* motions were effective to invoke his statutory right

separately from the issue of whether they were effective to assert his constitutional right.

## A. Statutory Right to Speedy Trial Cannot Be Invoked by Defendant Pro Se.

■ Mr. McKee claims that the trial court's inaction on his *pro se* motions violated his statutory right to a speedy trial under section 545.780. Section 545.780 states:

1. If defendant announces that he is ready for trial and files a request for a speedy trial, then the court shall set the case for trial as soon as reasonably possible thereafter.

2. The provisions of this section shall be enforceable by mandamus. Neither the failure to comply with this section nor the state's failure to prosecute shall be grounds for the dismissal of the indictment unless the court also finds that the defendant has been denied his constitutional right to a speedy trial.

The statute expressly states that it does not entitle a defendant to dismissal unless the constitutional right to speedy trial is also violated. Sec. 545.780(2); *see also State v. Owsley*, 959 S.W.2d 789, 794 (Mo. banc 1997) (statute provides that indictment cannot be dismissed where the defendant is not denied his constitutional right to a speedy trial).[9]

8. Trial courts occasionally appoint counsel to operate as "standby counsel" when a defendant chooses self-representation. Occasionally, the appellate courts have referred to this as "hybrid representation," *see e.g., State v. White*, 44 S.W.3d 838, 846–47 (Mo.App. W.D. 2001), but those cases are different than the case at bar, where the defendant at no time was permitted to proceed *pro se* or with only standby counsel.

9. The *dicta* in *State v. Owsley* that "the statute provides [a defendant] no relief" where he is not denied his constitutional right to a speedy trial, 959 S.W.2d 789, 794 (Mo. banc 1997), refers to the effect of the statute on a defendant's right to have a charge dismissed. The statutory speedy trial right could, if necessary, be enforced by mandamus where a trial court failed to timely bring a case to trial once the statute was properly invoked, even where there was no violation of the constitutional right to a speedy trial. The statute makes it

■ The statute's self-evident purpose is not to expand the constitutional right to a speedy trial, but rather to provide a mechanism for bringing a case to trial when a defendant seeks a timely resolution of his or her case. The statute accomplishes this purpose by requiring the court to set a case for trial "as soon as reasonably possible" after "defendant announces that he is ready for trial and files a request for a speedy trial." Sec. 545.780(1). The statute limits the harsh remedy of dismissal for its violation to only those cases where there is also a constitutional violation, which should be analyzed separately from the statutory violation. *See State v. Bolin*, 643 S.W.2d 806, 810 (Mo. banc 1983) (distinguishing between the constitutional and statutory rights to a speedy trial).[10]

Mr. McKee clearly intended to invoke the protections of Missouri's speedy trial statute in his *pro se* motions. In his August 15, 2007, motion, for example, he argued that "at every trial setting defendant answered ready and available for trial." But section 545.780, in requiring that defendant announce that he is "ready for trial," clearly contemplates that it is counsel, not the represented defendant, who must invoke this statutory protection. Any other interpretation of the statute could place defense counsel in an untenable position when, for example, a *represented* defendant announced "ready for trial" without consulting his or her counsel, and counsel was not, in fact, ready for trial.

Trial would then have to proceed with counsel who could potentially be inadequately prepared.

■ Since the statute provides a procedure for a defendant's trial to be held expeditiously, and since, where defendant is represented by counsel, it is counsel who will try the case, it therefore must be counsel's prerogative to announce when the defense is "ready for trial" for the purposes of Missouri's speedy trial statute. *See Wolfrum*, 225 S.W.3d at 412.

In this case, while Mr. McKee did invoke his right to speedy trial, so far as the record shows (and the record submitted to this Court is by no means complete), Mr. McKee's defense counsel never announced ready for trial. Mr. McKee's *pro se* declaration that he was ready for trial was not effective to trigger the statute's protections, as it was counsel—not Mr. McKee—who would try the case. Therefore, this Court agrees with Respondent that Mr. McKee cannot claim a violation of the speedy trial act.

### B. The Constitutional Right to Speedy Trial Can Be Invoked Pro Se Even by a Represented Defendant.

■ The outcome is different, however, in regard to Mr. McKee's constitutional right to a speedy trial. The constitutional right to speedy trial is unique in that its assertion, under some circumstances, can place the defendant in a conflicting posi-

---

clear that the remedies for statutory violations, however, cannot include dismissal of the indictment unless there also is a constitutional violation.

**10.** This Court in *Bolin* held that "the constitutional standard ... has no application when the question is whether a defendant has been denied a statutory speedy trial right." *Bolin*, 643 S.W.2d at 810. At the time of *State v. Bolin*, the speedy trial statute required a defendant to be brought to trial within 180 days

of arraignment. *See* Sec. 545.780(2), RSMo 1978. In 1986, the legislature amended the statute to make the defendant's constitutional right to a speedy trial relevant to the remedy for statutory violations, so the statement in *Bolin* that the constitutional standard "has no application" is no longer relevant. The Court's recognition of the difference between constitutional and statutory standards, however, remains pertinent today.

tion with defense counsel. Unlike the right to an impartial jury or the right to confront and cross-examine witnesses, where defense counsel is often in a better position to understand the contours of the right and appreciate situations in which it has not been properly respected, the right to a speedy trial depends, in part, on circumstances that are uniquely experienced by the defendant. "[T]he speedy trial right exists primarily to protect an individual's liberty interest, 'to minimize the possibility of lengthy incarceration prior to trial ... and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.'" *United States v. Gouveia,* 467 U.S. 180, 190, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984) (addressing distinction between right to speedy trial and right to counsel under the Sixth Amendment) (quoting *United States v. MacDonald,* 456 U.S. 1, 8, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982)). Although defense counsel may understand that pretrial incarceration is a vexing condition, the prejudice to the defendant that flows from this condition is neither experienced nor directly shared by defense counsel. A defendant, thus, has a reason, not necessarily shared by counsel, to want trial to proceed as expeditiously as possible.

Even excellent defense counsel may not be prepared to go to trial and may seek a continuance, or multiple continuances, due to the press of other business or for other perfectly proper reasons unrelated to the defense of defendant's case. The individual defendant, whose right to a speedy trial is at stake, may not care about those other cases or those other reasons. The defendant incarcerated while awaiting trial is properly concerned with his own need to resolve the charges against him. The ten-

sion between the burdens on defense counsel and the defendant's desire to resolve the charges quickly appears to have arisen in this case, in which defendant repeatedly sought a speedy trial, and counsel appears never to have sought to bring the case to trial or to call up the speedy trial motions or motion to dismiss for hearing.

Perhaps with this type of situation in mind, our court of appeals repeatedly has allowed a represented defendant to assert his right to a speedy trial through a *pro se* motion. *See e.g., State v. Smith,* 849 S.W.2d 209, 214 (Mo.App. E.D.1993) (filing of a *pro se* motion for speedy trial represents "the first formal assertion of [the] right to a speedy trial"); *State v. McNeal,* 699 S.W.2d 457, 461 (Mo.App. E.D.1985) (defendant timely asserted "his right to a speedy trial in a *pro se* motion"); *State v. Morris,* 668 S.W.2d 159, 163 (Mo.App. E.D.1984) (appellant asserted the right "when he filed a *pro se* motion to dismiss based on his constitutional right to a speedy trial and [sec.] 545.780, the speedy trial statute"). *See also State v. Galvan,* 795 S.W.2d 113, 117–18 (Mo.App. S.D.1990) (delays under sec. 217.460, the Uniform Mandatory Disposition of Detainers Law, should be calculated based on "the day defendant filed his *pro se* request for speedy trial").[11] The federal courts, too, have allowed a defendant to assert speedy trial rights through *pro se* motions. *See, e.g., U.S. v. Rothrock,* 20 F.3d 709, 712 (7th Cir.1994) (construing *pro se* motion for speedy trial as effective to assert both statutory and constitutional rights).

In light of this precedent and the unique and conflicting interests of defendant and of his counsel in regard to a request for speedy trial, this Court affirmatively holds what Missouri's court of

---

11. Section 217.460 requires pending charges filed against persons already serving sentences in the department of corrections to be resolved within 180 days of a request for their resolution. It protects the same interests as the speedy trial statute.

appeals has long recognized: a represented defendant may assert his constitutional right to a speedy trial through a *pro se* motion. This Court then must determine whether Mr. McKee's constitutional right to speedy trial has been violated.

## IV. A RECORD MUST BE MADE AS TO WHETHER DEFENDANT'S CONSTITUTIONAL SPEEDY TRIAL RIGHT WAS VIOLATED

 The United States and Missouri Constitutions provide equivalent protection for a defendant's right to a speedy trial. *See Bolin*, 643 S.W.2d at 810 n. 5 (the "Missouri constitutional provision" protecting the right to a speedy trial is not "any broader in scope than is the sixth amendment"). To assess whether the constitutional right to a speedy trial has been respected or denied, the Court must balance four factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *See State v. Edwards*, 750 S.W.2d 438, 441 (Mo. banc 1988); *Barker v. Wingo*, 407 U.S. 514, 533, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

In this case, there is no dispute about the length of the delay. As of the date of this opinion, Mr. McKee has been detained awaiting trial for over 18 months. Missouri courts have held that delays longer than eight months are presumptively prejudicial to the defendant. *State v. Williams*, 34 S.W.3d 440, 447 (Mo.App. S.D.2001) ("eight months or longer is presumptively prejudicial"); *see also State v. Farris*, 877 S.W.2d 657, 660 (Mo.App. S.D. 1994) (citing cases holding eight months or longer is presumptively prejudicial).

 Moreover, the accusations levied against Mr. McKee represent, at most, ordinary street crimes. "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a seri-

ous, complex conspiracy charge." *Barker*, 407 U.S. at 530, 92 S.Ct. 2182; *see also Bolin*, 643 S.W.2d at 814 ("for this 'ordinary street crime' ... a delay of seven months ... is presumptively prejudicial").

 The delay in bringing a defendant to trial is measured from the time of arrest, not from the time that the right is first asserted. *Bolin*, 643 S.W.2d at 813 ("the protections of the speedy trial provisions attach when there is a formal indictment or information or when actual restraints [are] imposed by arrest and holding to answer a criminal charge") (internal quotations omitted); *United States v. MacDonald*, 456 U.S. 1, 6, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982) ("In addition to the period after indictment, the period between arrest and indictment must be considered in evaluating a Speedy Trial Clause claim"). But, the timely assertion of the right to speedy trial is a factor in determining whether the speedy trial right has been violated. *Id.* at 814. "Although '[a] defendant has no duty to bring himself to trial,' " " 'failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.' " *Id.* (*citing Barker*, 407 U.S. at 527, 532, 92 S.Ct. 2182).

Here, there is little dispute that defendant timely filed *pro se* motions asserting his right to speedy trial. He filed his first motion one month after his indictment, when he had already been incarcerated for just over three months. In the intervening year, he filed repeated requests to be brought to trial quickly.

The two factors that do present live disputes in this mandamus petition are the reasons for the many delays and the prejudice inuring to Mr. McKee from those delays. Mr. McKee asserts that the state is entirely responsible for the delay in this case. The record discloses at least four continuances of the trial date with almost

no information regarding why they were continued. The January date was continued to April at the request of the court, but the record contains no information regarding why the April, July, and October dates were continued. Since each continued trial date prompted Mr. McKee to file another motion for speedy trial, it seems evident that none of these continuances were entered at his request. It is unclear whether some were at the behest of the circuit attorney, or whether some or all occurred because of dockets so congested that the case simply could not be reached. Counsel at oral argument were unable to provide the Court with any clarity on the reason for these continuances.

 To the extent that these delays are due to the court's docket they "should be weighted less heavily [against the state than deliberate delays to hamper the defense] but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker*, 407 U.S. at 531, 92 S.Ct. 2182.

Respondent asserts that Mr. McKee is responsible for two of the delays, citing instances in January and July 2007 in which Mr. McKee expressed a willingness to plead guilty and then did not go forward with that plea at the hearing. Although the record does contain some references to a plea hearing, there is nothing in the record before this Court that discloses the circumstances of those plea hearings, who scheduled them and what exactly took place. For example, the record contains a letter from Mr. McKee file-stamped August 3, 2007, that indicates he appeared before Judge Riley "briefly" on July 27, 2007, and that it was his "sincere intention to resolve this cause with a plea agreement with the state" but that he was unable to do so due to unfamiliarity with the "procedure one should practice when standing before you." [12] The docket entries reflect no activity on July 27, however, leaving this Court unable to discern from this record what, if anything, took place at this alleged appearance.

If the parties expected the case to be resolved at these plea hearings and then, due solely to a change of heart by defendant it was not, then some associated delay would be attributable to the defendant. But Respondent also acknowledged that there was a factual error in the indictment as to the felony count on the date of the apparent January plea hearing, an error corrected by a superseding information filed on January 31, 2007. A defendant's unwillingness to plead guilty to a factually inaccurate indictment is unlikely to be a delay attributed to the defendant. "It is ultimately the duty of the state to bring a defendant to trial." *Bolin*, 643 S.W.2d at 814.

Respondent also argues that it deferred its efforts to obtain blood and saliva samples from Mr. McKee at the request of defense counsel, who the circuit attorney says represented that such efforts would be detrimental to the plea negotiations.[13] Presuming a record of such an agreement could be made below, it might well justify some delay in testing until a plea hearing could be held. But, once the plea agreement failed in January 2007, the case was set for trial in April and the state subpoe-

---

12. This letter also states that Mr. McKee "made a counter-offer" in the plea negotiations "in a desperate desire to resolve this matter after 14 months of stressful pretrial incarceration."

13. According to the motion to compel blood and saliva samples, there was "blood on the center console of the victim's vehicle" with which the state sought to compare Mr. McKee's blood.

naed its witnesses for that date. It does not appear reasonable on this record for the prosecution to have delayed pursuit of this evidence after the January plea negotiations failed. Certainly when the plea agreement allegedly failed *again* in July 2007, the prosecution had no basis to further delay taking steps to secure scientific evidence it apparently felt might identify the culprit. A speedy trial is not only for the benefit of the defendant, it "is also for the benefit of society." *State ex rel. Kemp v. Hodge,* 629 S.W.2d 353, 356 n. 4 (Mo. banc 1982). *See also Zedner v. United States,* 547 U.S. 489, 126 S.Ct. 1976, 1985, 164 L.Ed.2d 749 (2006) (holding that federal speedy trial statute protects both the interests of the defendant and the public in the speedy disposition of criminal charges).

■ Based on the uncertainties in the record on this petition, this Court simply lacks a sufficient record from which it can determine to whom the delays in bringing Mr. McKee to trial should be attributed and, if some is attributable to the defendant, how much of the overall delay is attributable to his conduct. Without that record, this Court lacks sufficient information regarding the causes of the delays to reach a conclusion whether Mr. McKee's right to a speedy trial has been violated. Such a determination should be made—indeed it should have *already* been made—by the trial court in the first instance. The failure to provide any reasons for granting continuances in a criminal case coupled with the complete absence of record entries reflecting significant actions in the case is exceedingly troubling. It leads to a lack of confidence in the record as a whole and in the record-keeping practices of the trial court.

Since a hearing will be required to determine the reasons for the lengthy delay in this case, the Court will also entrust to the trial court an inquiry regarding the specific prejudice this delay has caused Mr. McKee. The present record discloses a lengthy period of pretrial incarceration, which in some cases would provide sufficient prejudice to conclude that the defendant's constitutional rights were violated. *See Doggett v. United States,* 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) ("the presumption that pretrial delay has prejudiced the accused intensifies over time"). There may be other factors relevant to prejudice that can be developed at an evidentiary hearing (e.g., availability of witnesses, loss or spoliation of evidence, particular harm flowing from the defendant's pretrial incarceration).

■ In considering how to weigh any delay caused by crowded dockets, this Court and Respondents must take into consideration that the delay in this case is not unique. Numerous other petitions for writs have been filed in this Court by persons incarcerated while awaiting disposition of their charges in this and on some occasions in other jurisdictions, similarly alleging lengthy delays. The right to a speedy trial is an important right that the courts of this state are duty-bound to honor, even in the face of heavy trial dockets and competing demands for trial. Protracted and unreasonable delays in criminal cases due to crowded dockets cannot become routine. Neither is it acceptable for the prosecuting attorney and defense counsel to accept or request such routine continuances without objection. The defendant's right to a speedy trial and the public's interest in timely resolution of criminal cases demands that this and other similar cases receive more expeditious treatment, even in the face of competing demands on counsels' and the court's time.

This Court does not mean to suggest that any party to this proceeding has intended to violate any defendant's speedy trial rights, but "unreasonable delay in

run-of-the-mill criminal cases cannot be justified by simply asserting that the public resources provided by the State's criminal-justice system are limited and that each case must await its turn." *Barker*, 407 U.S. at 538, 92 S.Ct. 2182 (White, J., concurring). Mr. McKee is entitled to a prompt hearing on his claim that his constitutional rights have been violated and, if they have not yet been, then he is entitled to a prompt trial on the merits of these charges.

## V. CONCLUSION

Because this case involves assertion of the right to speedy trial after a lengthy delay, the Court quashes its alternative writ and directs its peremptory writ to issue commanding Respondent: (1) to immediately hold a hearing to determine whether the conditions placed upon Mr. McKee's release at the time of his arrest pursuant to Rule 33.01 remain appropriate,[14] and (2) to convene a hearing within seven days of this Court's mandate to determine whether Mr. McKee's constitutional right to a speedy trial has been violated.[15] If the trial court finds that his speedy trial right has been violated, the charges against Mr. McKee shall be immediately dismissed. If the trial court concludes otherwise Mr. McKee shall be brought to trial as soon as practicable thereafter, but *in no event* more than thirty days after the hearing on his motion.

TEITELMAN, LIMBAUGH, RUSSELL, WOLFF and BRECKENRIDGE, JJ., concur.

PRICE, J., concurs in part in separate opinion filed.

**WILLIAM RAY PRICE, JR.**, Judge, concurring in part.

I concur with the majority that an immediate hearing is necessary concerning Tracy McKee. I differ concerning the reason for the hearing and, in part, the focus of the hearing.

Once represented by an attorney, a party cannot independently pursue a separate strategy with separate court filings. *See State ex rel. Wolfrum v. Wiesman*, 225 S.W.3d 409, 412 (Mo. banc 2007); *State v. Williams*, 34 S.W.3d 440, 442 (Mo.App. 2001). The majority creates an exception to this rule concerning an individual's constitutional right to a speedy trial. Such an exception, even in this important and limited circumstance, threatens confusion and gamesmanship in our criminal procedure.

While I would not recognize Mr. McKee's written communications to the court as "filings" that invoke procedural and constitutional rights, they are evidence that indicate the attorney-client relationship has failed, jeopardizing Mr. McKee's right to adequate representation and, in turn, his right to a speedy and fair trial. Mr. McKee has been incarcerated for over 17 months and has written to the court in one form or another on six separate occasions complaining of delay. I would hold that when presented with this evidence, the trial court is obligated to immediately

---

**14.** Rule 33.06 allows the trial court to "modify the requirements for release."

**15.** Although the period for filing post-disposition motions is ordinarily fifteen days under Rule 84.17, in light of the lengthy delay in bringing Mr. McKee to trial thus far, the Court shortens the period for filing post-disposition motions so that any such motion shall be filed on or before 12:00 noon on December 28, 2007. See Rule 84.24(j) (allowing Court on original writs to "dispense with such portions of the procedure as is necessary in the interests of justice"); *see also* Rule 94.01 (permitting Court on mandamus to "direct the ... details of procedure as may be necessary ... to give effect to the remedy").

investigate and, if necessary, remedy the situation.