

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FIVE

| | | |
|---|---|---|
| STATE OF MISSOURI | ) | ED112252 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | 2222-CR01334 |
| | ) | |
| TYRONE WILLIAMS, | ) | Honorable Theresa C. Burke |
| | ) | |
| Appellant. | ) | Filed: May 27, 2025 |

Before Thomas C. Clark II, C.J., Philip M. Hess, J., and James M. Dowd, J.

## OPINION

On September 8, 2021, Tyrone Williams shot and killed Victim. The two men had fought earlier that day over their respective relationships with Tarez Campbell, with whom each had a child. The State charged Williams with first-degree murder and armed criminal action. A jury convicted Williams of those crimes, and the court sentenced him to life in prison without the possibility of parole for the murder conviction and a consecutive term of three years for the armed criminal action conviction.

Williams asserts four points on appeal: (1) that the trial court erred in denying his motion to dismiss on the basis of improper prosecutorial vindictiveness after the prosecutor threatened Williams' counsel that he would upgrade the second-degree murder charge to first-degree murder if Williams did not make a plea offer, (2) that the court erred in allowing the State to

publish to the jury a demonstrative exhibit, which consisted of a slowed-down video of the shooting, because it was unduly prejudicial, (3) that the court erred in failing to intervene *sua sponte* and issue a curative instruction when the State, in its closing argument, made an improper acquittal-first argument by telling the jury they could only consider second-degree murder if they first found Williams not guilty of first-degree murder beyond a reasonable doubt, and (4) that the trial court erred in failing to dismiss the case because the State violated his right to a speedy trial in that he spent 741 days in jail awaiting trial and most of the delays were attributable to the State and to the court.

We affirm. As to point I, we find that while the prosecutor's tone was coarse, he had the discretion and an adequate factual basis to increase the charge from second-degree murder to first-degree murder. As to point II, we find that the conditions the trial court put on the demonstrative video's use diminished any prejudicial impact it may have had. In point III, we find the State's acquittal-first argument, while improper, was not outcome determinative. As to point IV, no speedy trial violation occurred because Williams did not show that the delay was sufficiently prejudicial or that it was intended to disadvantage Williams' defense.

### Background

On November 23, 2021, the State charged Williams with second-degree murder and armed criminal action for the September 8, 2021, shooting death of Victim on Whittier Street in the City of St. Louis. Two weeks before the first trial setting on September 6, 2022, the prosecutor texted Williams' counsel, "Maybe you should make an offer on Murder-Two before he's reindicted on Murder-One. I don't bluff. You have a week." No plea negotiations occurred and on the morning of trial the State *nolle prosequied* the charges and then reindicted Williams, this time for *first*-degree murder, the lesser-included charge of second-degree murder, and armed

2

criminal action. The State based its first-degree murder and associated armed criminal action charges on witness Campbell's deposition testimony that Williams told Campbell he was going to murder Victim hours before doing so.

The record relevant to Williams' claim of a speedy trial violation includes the following: From his arrest to trial, 741 days elapsed. Of those 741 days, forty-one are attributable to Williams with the remainder attributable to the State and to the court's normal operations. 417 of the 741 days transpired after the State indicted Williams for first-degree murder.

Williams made four speedy trial requests. The first request was on February 23, 2022, another on August 24, 2022, in his motion to dismiss, another on May 1, 2023, and the last one on September 5, 2023. On May 9, 2023, the trial court granted the State's continuance request over Williams' objection which moved the trial date to September 5, 2023, and added 115 days to the overall delay. A week before the September 5 trial, and after two new assistant circuit attorneys entered their appearances, the State again moved to continue the case to October 30, 2023, which added an additional 55 days. Williams' trial took place from October 30 to November 2, 2023.

Williams does not contest the sufficiency of the evidence supporting his convictions and viewed in the light most favorable to the verdict, the following evidence was adduced at trial: Williams and Victim each had a child with Campbell and Victim lived across the street from Campbell. Though they no longer maintained a romantic relationship, Williams and Campbell stayed in contact regarding their child. On September 8, 2021, Williams brought the child to Campbell's home and then borrowed Campbell's car to run an errand. Upon his return, Williams fell asleep on Campbell's living-room couch.

3

While Williams slept, Victim arrived at house during his work break.  Before leaving, Victim told Campbell he was unhappy that Williams was there.  Williams then awoke and Campbell told him that Victim was annoyed he was there sleeping.

Later that afternoon, Victim returned to Campbell's home to find Williams still there. The men exchanged words which led to a physical altercation.  Williams left.  He then phoned Campbell and told her that when he returned he was going to kill Victim.  The record does not reflect that Campbell reported this threat to the police.

Upon his return, Williams and Victim argued again outside Campbell's residence before Williams shot Victim several times at close range.  Victim was alive when police arrived but died later that day.

A neighbor's security camera captured the shooting.  Prior to trial, the State created a slowed-down version of the video which extended the 23-second encounter into approximately three minutes of slow-motion video footage.  This enhanced video included at one point the on-screen phrase "apparent muzzle flash" near Williams' firearm.  Williams moved in limine to exclude this demonstrative exhibit entirely because it was not a fair and accurate depiction of the shooting.  The court disagreed but required the State (1) to remove the phrase "apparent muzzle flash," (2) to show the jury the *original* video first, and (3) to establish the expert qualifications of the officer who edited the video.  The State complied with these conditions and exhibited the enhanced video to the jury.

For his part, Williams testified at trial and admitted he shot Victim but claimed he did so in self-defense because he saw Victim reach behind his back and pull out a gun.

The jury found Williams guilty of first-degree murder and armed criminal action. Williams waived jury sentencing and the court sentenced him to life without parole for first-

4

degree murder and a consecutive sentence of three years for the armed criminal action conviction.

This appeal follows.

**Discussion**

*Point One: Vindictive Prosecution*

Williams claims the trial court abused its discretion in denying his motion to dismiss because the State vindictively increased its charges from second-degree murder to first-degree murder after Williams failed to make a plea offer and instead insisted on a jury trial on the second-degree murder charge. We disagree because Williams did not demonstrate the State's sole purpose for the increased charge was to penalize Williams for exercising his constitutional right to a trial by jury. Rather, the record shows that the State had a sound evidentiary basis that Williams deliberated well in advance of the murder, and the jury agreed.

We review a trial court's ruling on a motion to dismiss a charging instrument for an abuse of discretion. *State v. Turner*, 683 S.W.3d 709, 717 (Mo. App. W.D. 2023). "The due process clause of the Fourteenth Amendment prevents a prosecuting attorney from acting vindictively to punish a criminal defendant for exercising a right." *State v. McWilliams*, 698 S.W.3d 783, 788-89 (Mo. App. E.D. 2024). The defendant has the initial burden to show that there is a likelihood of vindictiveness. *Id.* at 789. "A presumption of vindictiveness is established when 'the facts show a realistic likelihood of vindictiveness in the prosecutor's augmentation of charges.'" *State ex rel. Becker v. Wood*, 611 S.W.3d 510, 514 (Mo. banc 2020) (quoting *State v. Gardner*, 8 S.W.3d 66, 70 (Mo. banc 1999)).

Courts weigh two factors to determine whether a realistic likelihood of prosecutorial vindictiveness exists: "(1) the prosecutor's stake in deterring the exercise of some right, and (2)

5

the prosecutor's conduct." *Id*. "In order for the defendant to prove an allegation of prosecutorial vindictiveness, he must show that the additional charges were brought solely to penalize the defendant for exercising his constitutional rights and cannot be justified as a proper exercise of prosecutorial discretion." *State v. Molinett*, 876 S.W.2d 806, 809 (Mo. App. W.D. 1994). Once established, the State then must defend the charge with objective explanations of its rationale. *Id.* at 514-515 (quoting *State ex rel. Patterson v. Randall*, 637 S.W.2d 16, 18 (Mo. banc 1982) (further citation omitted)). A presumption of vindictiveness is rarely found at the pretrial stage. *See Wood*, 611 S.W.3d at 515 n. 7.

Here, Williams confuses the prosecutor's juvenile belligerence with vindictiveness. The prosecutor could have gotten to the same place by simply alerting Williams' counsel that if the then-current charges were not resolved by way of a plea agreement before the September 6 trial, then the prosecutor would *nolle prosequi* the charges and refile the case with the first-degree murder charge, something the prosecutor had the discretion and factual basis to do. *See Wood*, 611 S.W.3d at 514 (A prosecuting attorney has broad, almost unfettered discretion in deciding what charge and what punishment to seek.). Thus, Williams has failed to carry his burden on this issue.

Point denied.

*Point Two: The Slow-Motion Demonstrative Video of the Murder*

We reject Williams' claim that the slow-motion version of the video of the murder was inadmissibly misleading and prejudicial. Rather, the court adroitly imposed conditions on the State's use of the demonstrative video so that the video was relevant, not misleading, and served a legitimate purpose.

We review a trial court's decision regarding the admission or exclusion of evidence for an abuse of discretion. *State v. Wood*, 580 S.W.3d 566, 574 (Mo. banc 2019). As such, we will uphold a trial court's ruling in this context if it is sustainable under any theory. *State v. Black*, 666 S.W.3d 205, 208 (Mo. App. E.D. 2023). Demonstrative evidence may be admissible so long as it is both logically and legally relevant. *State v. Brown*, 337 S.W.3d 12, 15 (Mo. banc 2011). Logical relevance refers to the tendency to make the existence of a material fact more or less probable, while legal relevance weighs the evidence's probative value against unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness. *Johnson v. State*, 406 S.W.3d 892, 902 (Mo. banc 2013). When assessing the relevance of demonstrative evidence, a court must ensure that the evidence is a fair representation of what is being depicted and that it is not inflammatory, deceptive, or misleading. *Id.*

The foregoing authorities lead us to conclude that this video was logically and legally relevant and its publication to the jury was not an abuse of discretion. First, manifestly, a video that depicts the crime at issue is logically relevant. *See State v. Middleton*, 995 S.W.2d 443, 462 (Mo. banc 1999). Second, the conditions the trial court imposed on the State's use of the video minimized any potential prejudice such that its probative value outweighed any prejudice. Specifically, the court ordered the State to remove the phrase "apparent muzzle flash," the jury first saw the murder video at regular speed, and then heard the video-editing officer's explanations of the edits, all of which minimized the risk of misleading or deceiving the jury.

Accordingly, we deny Williams' second point.

*Point Three: Closing Argument*

Williams claims the court plainly erred in failing to *sua sponte* issue a curative instruction after the State made an acquittal-first argument in its closing. For its part, the State concedes that

7

its acquittal-first argument was improper and constituted clear error. Thus, under our plain error standards, we review whether the error resulted in a manifest injustice or a miscarriage of justice for which Williams must show the error to be outcome determinative. *State v. Teter*, 665 S.W.3d 306, 312 (Mo. banc 2023). We find no outcome-determinative manifest injustice or miscarriage of justice here because there is ample evidence that Williams murdered Victim after deliberating on it.

"[A]n acquittal first argument will be upheld if 'the strength of the evidence of deliberation precludes a finding of prejudice." *Id.* (quoting *Tisius v. State*, 183 S.W.3d 207, 217 (Mo. banc 2006)). Here, the evidence of deliberation is strong. Williams announced his intention to murder Victim before proceeding to shoot Victim at close range, and the murder was videotaped. This evidence effectively precludes a finding of a miscarriage of justice.

For his part, Williams argues that the jury's question to the court during its deliberations regarding "reasonable doubt" in the context of Williams' "deliberation" somehow demonstrates manifest injustice or miscarriage of justice. We disagree because Williams fails to show how the jury's inquiry as to the deliberation element of first-degree murder was related to the State's acquittal-first argument. And the court instructed the jury that it could find Williams guilty of the lesser included second-degree murder charge if it did not find him guilty of first-degree murder. See *State v. Johnson*, 284 S.W.3d 561, 574 (Mo. 2009) ("[A] lesser included offense may be considered when the jury is deadlocked on the greater offense.")

Point denied.

### Point Four: Speedy Trial

Lastly, we turn to Williams' claim that the trial court should have dismissed this case because the 741-day delay from arrest to trial violated his constitutional right to a speedy trial.

8

Unpersuaded, we reject Williams' claim because although the 741-day delay is presumptively prejudicial, he failed to show how the State's continuance requests were a deliberate ploy to delay the trial to hamper his defense or that he was otherwise prejudiced. *Barker v. Wingo*, 407 U.S. 514, 520 (1972).

We review *de novo* claims of a violation of a defendant's Sixth Amendment right to a speedy trial, but we defer to the trial court's factual findings. *State v. Sisco*, 458 S.W.3d 304, 313 (Mo. banc 2015). The right to a speedy trial appears in both the United States and Missouri constitutions. *Id.*, U.S. Const. Amend. VI; Mo. Const., art. I, § 18(a). We apply a four-factor analysis: (1) the length of the delay; (2) the cause of the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant resulting from the delay. *Sisco*, 458 S.W.3d at 313 (citing *Barker*, 407 U.S. at 520). The existence of any one of these factors is neither necessary nor sufficient to find a speedy trial deprivation. *Id.*

First, the length of the delay. Missouri courts find any delay longer than eight months to be presumptively prejudicial. *State ex rel. McKee v. Riley*, 240 S.W.3d 720, 731 (Mo. banc 2007). The delay is measured from the formal indictment or arrest, to the beginning of trial. *State v. Ausler*, 697 S.W3d 24, 31 (Mo. App. E.D. 2024). Delays the defendant caused are subtracted from the total delay when considering this factor. *Id*. Thus, the 700 days attributable to the State is presumptively prejudicial and triggers continued analysis.

Second, the cause or causes of the delay. "Pretrial delay is often inevitable and wholly justifiable." *State v. Davis*, 903 S.W.2d 930, 936 (Mo. App. W.D. 1995). Deliberate delays by the State to hamper the defense weigh heavily against the State. *Ausler*, 697 S.W.3d at 31 (Mo. App. E.D. 2024). Delays caused by the regular functioning of the courts or the State's negligence but not shown to be a deliberate attempt to delay trial, are considered neutral and

9

weigh lightly against the State. *Id*. Delays caused by the COVID-19 pandemic are justifiable and unattributable. *Id*. Delays caused by defense-requested continuances weigh heavily against the defendant. *Sisco*, 458 S.W.3d at 314; *see State v. Henry*, 696 S.W.3d 59, 71 (Mo. App. S.D. 2024) (where the delay due to a request for a change of judge weighed heavily against defendant).

Since Williams effectively concedes that any delay before the September 6, 2022, reindictment resulted from the normal functioning of the court, we turn our attention to the post-reindictment delay. Of that 417-day delay, 214 days were attributable to normal court functions which weigh lightly against the State, 162 days followed the State's two continuance requests and weigh lightly against the State, and 41 days resulted from Williams' motions and those weigh heavily against Williams.

Again, we weigh lightly against the State the delays caused by its two continuance requests. *See Ausler*, 697 S.W.3d at 32. Although as to the first continuance request Williams now claims negligence and bad faith on the State's part, neither party, according to the record, offered a reason for the continuance at the time. Without evidence that the State deliberately delayed the trial to hamper the defense, we weigh the first delay lightly against the State. *Id*. As to the second continuance, a scheduling conflict triggered the withdrawal of the prosecutor assigned to the case and the State needed more time for the new prosecutor to prepare. This delay is considered neutral and also weighs lightly against the State. *Id*. Conversely, the 41-day delay Williams caused, including by his change of judge request, weighs heavily against him. *Henry*, 696 S.W.3d at 71. On balance, we do not find the lightly-weighted State's delays to be outcome determinative. *Ausler*, 697 S.W.3d at 32.

Third, Williams' assertion of his speedy trial rights. As we have noted, Williams did so four times and these repeated speedy trial reclamations weigh in his favor. *See Barker*, 240 S.W.3d at 531-32.

Finally, we address the most serious factor – whether the delay prejudiced the defendant, for which we invoke three primary considerations: (1) the prevention of oppressive pretrial incarceration; (2) the minimization of anxiety and concern of the accused; and (3) the limitation of the possibility that the defense will be impaired. *Sisco*, 458 S.W.3d at 317. Any claimed prejudice resulting from delay must be actual and apparent on the record or by reasonable inference and speculative prejudice is not sufficient. *State v. Newman*, 256 S.W.3d 210, 217 (Mo. App. W.D. 2008). And the prejudice has to be more than the prejudice that normally attends any criminal proceeding, i.e., that memories will dim, witnesses will become inaccessible, and evidence will be lost. *State v. Bell*, 66 S.W.3d 157, 162, 165 (Mo. App. S.D. 2001). Finally, the defendant bears the burden of proving prejudice. *State v. Howell*, 628 S.W.3d 750, 759 (Mo. App. E.D. 2021).

Here, Williams does not specifically address whether he suffered oppressive pretrial incarceration or anxiety and concern, but claims instead that the delay impaired his defense. In so doing, Williams offers general research regarding the purported connection between pretrial detention and the increased likelihood of a resulting conviction. While we agree with the basic premise of the importance of speedy prosecution to the criminal justice system, this generic research does nothing to prove any prejudice specific to Williams on this record. *See Newman*, 256 S.W.3d at 217.

Moreover, Williams was convicted and sentenced to life in prison without the possibility of parole. He cannot claim, therefore, that he served additional, unwarranted jailtime because of

the delay in bringing him to trial. *See State v. Lewis-Jones*, 698 S.W.3d 507, 516 (Mo. App. E.D. 2010).

For his part, Williams relies on *Doggett v. United States,* 505 U.S. 647, 655-8 (1992), for the notion that a speedy trial violation may exist even when specific prejudice is not shown. *Id. Doggett* is readily distinguishable and therefore unhelpful to Williams because of the extraordinarily long delay – 8 ½ years – and the indication that in *Doggett* the State intentionally held back its prosecution to "gain some impermissible advantage at trial." *Sisco*, 458 S.W.3d at 315-16 (citing *Doggett*, 505 U.S. at 656). The delay in *Doggett* dwarfs the delay here and there is no support in this record that the State intentionally delayed the trial to gain an advantage or damage Williams' defense.

While we are concerned about the length of time it took the State to try Williams, he has not carried his burden to show that his speedy trial rights were violated. Point denied.

### Conclusion

Based on the foregoing, we affirm.

_____
James M. Dowd, Judge

Thomas C. Clark, II, C.J. and
Philip M. Hess, J. concur.

12