

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI, )
)
               Respondent, )
)
v. ) No. SC93785
)
SYLVESTER R. SISCO, II, )
)
               Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
The Honorable Sandra Midkiff, Judge

*Opinion issued March 10, 2015*

Sylvester R. Sisco appeals his convictions after a jury trial for murder in the first degree, assault in the first degree, and two counts of armed criminal action. On appeal, Mr. Sisco asserts that the trial court erred in overruling his motion to dismiss and in not designating the state's *nolle prosequi* as a dismissal with prejudice because those rulings violated his right to a speedy trial under section 545.780, RSMo 2000, article I, sections 10 and 18 of the Missouri Constitution, and the Sixth and Fourteenth amendments to the United States Constitution. The trial court did not err in not designating the state's *nolle prosequi* as a dismissal with prejudice because the court did not have authority to do so. The trial court also did not err in overruling Mr. Sisco's motion to dismiss on the basis of a speedy trial violation because the length of delay in this case is outweighed by the

reasons for the delay, Mr. Sisco initially acquiesced to the delay, and no prejudice resulted from the delay. Accordingly, this Court affirms the trial court's judgment.

**Factual and Procedural Background**

In the early morning hours of October 16, 2006, Mr. Sisco and his brother, Anthony Sisco, shot and killed Jacob Higgs and seriously wounded Reno Dillard at a bar in Kansas City, Missouri. The bar was owned by Mr. Dillard and his parents and brothers, and the men had access to the bar in the early morning hours after it closed. Still photographs taken from surveillance video at the bar were released to the media. Erin Bridges and Lucretia Neal had been at the bar with the men before the shooting, and they contacted police to identify Mr. Sisco and his brother as the individuals in the photographs.

A felony complaint was filed against Mr. Sisco on October 19, 2006, and Mr. Sisco was arrested and taken into custody the next day. On October 27, 2006, Mr. Sisco was charged by indictment with one count of murder in the first degree, one count of assault in the first degree, and two counts of armed criminal action. The case was assigned to division 10 of the Jackson County circuit court and trial was subsequently scheduled for August 20, 2007. On January 23, 2007, Mr. Sisco posted a bond with the condition that he would be on house arrest.

On August 14, 2007, the state requested and was granted a continuance until December 10, 2007, because the lead prosecutor had health issues. The court subsequently continued the case to March 24, 2008, due to docket constraints. After the judge in division 10 was placed on special assignment to handle a domestic docket, the

2

case was transferred to division 18 by agreement of the parties. Trial was reset for June 30, 2008.

On June 30, 2008, when the case was called for pretrial proceedings, Mr. Sisco announced he was ready for trial and informed the court that he had filed a motion requesting a speedy trial on that date. At the pretrial proceedings, the trial court was advised that Ms. Neal, one of the state's witnesses, had appeared under subpoena with an attorney and indicated that she planned to invoke her Fifth Amendment privilege against self-incrimination if called to testify. The state argued that Ms. Neal was an important witness because she had given a written statement to the police two days after the shootings that she was present in the bar with the victims, Mr. Sisco, his brother, Anthony, and Anthony's girlfriend, Erin Bridges, a short time before the shootings. Ms. Neal was granted immunity and ordered to testify at trial.

Because the state had concerns whether Ms. Neal would testify even with the grant of immunity, the state requested and was granted, over Mr. Sisco's objection, a continuance to have DNA testing performed on a swab from a Bluetooth device recovered at the crime scene. Although the state indicated it needed only a 30-day continuance, the court was not available in 30 days. Because defense counsel did not have his calendar, the attorneys agreed to consult with the judge later regarding a new trial date. The trial court then issued an order directing Mr. Sisco to provide a buccal swab so that his DNA could be compared with DNA from the Bluetooth device. On the following day, Mr. Sisco filed a motion asking the court to reconsider its order, and the court withdrew the order upon agreement of the parties.

On August 4, 2008, the case was transferred to division 15 by agreement of the parties after the judge in division 18 was assigned an exclusively domestic docket. On September 18, 2008, the state filed a new motion to compel Mr. Sisco to provide a buccal swab. A hearing on the motion was scheduled for October 3, but, on October 2, Mr. Sisco requested additional time to respond to the motion. Mr. Sisco filed his response opposing the state's motion on November 24, and a hearing was held the next day. On December 9, the trial court issued an order directing Mr. Sisco to provide a buccal swab. Trial then was scheduled for April 27, 2009.

Five days before trial, on April 22, 2009, the state provided Mr. Sisco with 113 pages of discovery and 14 DVDs containing enhanced surveillance footage. Included in the 113 pages of discovery was a report from a new fingerprint expert who recently had been asked to review the prints recovered from the crime scene. In the report, the expert, for the first time, identified a latent print from the crime scene as belonging to Mr. Sisco.[1] Previous discovery disclosed to Mr. Sisco included a report from a different fingerprint expert stating that none of the fingerprints found at the scene matched Mr. Sisco. The state informed Mr. Sisco that the original fingerprint expert had retired, was out-of-state, and would be unavailable to testify at trial.

On April 24, 2009, Mr. Sisco filed a motion *in limine* to exclude the fingerprint evidence because of the state's late disclosure of this evidence. A hearing was held the

---

[1] The state also discovered and disclosed fingerprints belonging to Mr. Dillard, one of the victims, and another individual.

4

same day, and the trial court sustained Mr. Sisco's motion.[2] The state then requested a continuance, which the court denied. Mr. Sisco's attorney stated that the state was considering dismissing the case and recharging Mr. Sisco at a later time if the fingerprints were excluded and asked whether that was still being considered. The state responded that it had not yet made a decision.

On April 27, 2009, the day of trial, Mr. Sisco announced that he was ready for trial. After the trial court denied the state's request to reconsider granting a continuance, the state dismissed the case *nolle prosqui*. Later that day, the state filed a new complaint with the same charges against Mr. Sisco. An information was filed against Mr. Sisco on May 4. Following an arraignment on that day, the case was assigned to division 13 and set for trial for July 6, 2009. Mr. Sisco filed a second motion for a speedy trial on May 6.

On June 29, 2009, Mr. Sisco filed a motion to dismiss the case with prejudice based on a violation of his right to a speedy trial. He amended the motion on July 1 to include a claim that the new information was invalid because Mr. Sisco had not waived his right to a preliminary hearing.[3] Trial was canceled for the court to adjudicate Mr. Sisco's motion. Following a hearing, the court determined that a preliminary hearing should be conducted because Mr. Sisco had not waived his right to one. The court held

---

[2] In his motion, Mr. Sisco also sought to exclude the DVDs containing the enhanced surveillance footage and documents relating to the surveillance footage. The court overruled Mr. Sisco's motion to exclude the surveillance footage and accompanying documents.

[3] In its order overruling Mr. Sisco's motion to dismiss, the trial court stated the motion was filed on July 2, 2009, but the docket sheet reflects that this motion was filed on July 1. This Court cannot resolve this discrepancy by looking at the file stamp on the motion because the motion is not a part of the legal file in this Court.

the motion in abeyance and ordered the parties to reconvene on July 10. Before the parties reconvened, however, the state charged Mr. Sisco by indictment, thereby eliminating any need for a preliminary hearing.

On July 10, 2009, Mr. Sisco moved for a change of judge. His motion was sustained on July 13, and the case was assigned to division 12. On July 13, Mr. Sisco filed a request for discovery, a motion to dismiss with prejudice, a motion *in limine* to exclude the fingerprint evidence and surveillance footage disclosed by the state on April 22, and a request for sanctions due to discovery violations. Despite venirepersons present and ready for jury selection on July 13, the trial court continued the case so that the state could respond to Mr. Sisco's motions. A hearing on the motions was held on July 15. On August 4, 2009, the trial court overruled the motion to dismiss after finding Mr. Sisco failed to prove a violation of his constitutional right to a speedy trial or actual prejudice. The court rescheduled trial for October 5.

Mr. Sisco's trial began on October 5, 2009.[4] During trial and in a motion for a new trial, Mr. Sisco again claimed that his right to a speedy trial had been violated. The jury returned verdicts finding Mr. Sisco guilty of all charges. The trial court sentenced Mr. Sisco to a term of life imprisonment without the possibility of parole on the murder count, to be served concurrently with a term of thirty years on the associated armed

---

[4]At trial, Ms. Neal invoked the Fifth Amendment when called to testify. She had to be questioned outside the presence of the jury, where she was repeatedly ordered to answer the state's questions. Ms. Bridges also invoked the Fifth Amendment and was granted immunity. Ms. Bridges was jailed for contempt for refusing to respond to the state's questions and was recalled to testify only after she decided to purge herself of contempt by testifying.

criminal action count. The court sentenced Mr. Sisco to 30-year terms of imprisonment on the assault and remaining armed criminal action counts, to be served concurrently with each other and consecutively with the other sentences.

Mr. Sisco appeals. After an opinion by the court of appeals, the case was transferred to this Court. Mo. Const. art. V, sec. 10.

## No Error in Not Designating
### *Nolle Prosequi* as Dismissal with Prejudice

On appeal, Mr. Sisco contends that the trial court erred in overruling his motion to dismiss and in not converting the state's *nolle prosequi* to a dismissal with prejudice because the state violated his right to a speedy trial. This Court will first address Mr. Sisco's argument that the trial court should have converted the *nolle prosequi* to a dismissal with prejudice because the state used the procedure to avoid the court's unfavorable ruling excluding the fingerprint evidence.

"A *nolle prosequi* is a prosecutor's formal entry on the record indicating that he or she will no longer prosecute a pending criminal charge." *State v. Clinch*, 335 S.W.3d 579, 583 (Mo. App. 2011) (internal quotation omitted). This Court has long recognized a prosecutor's broad discretion in determining whether to proceed with a prosecution. *See State v. Honeycutt*, 96 S.W.3d 85, 88 (Mo. banc 2003); *State ex rel. Griffin v. Smith*, 258 S.W.2d 590, 593 (Mo. banc 1953), *overruled on other grounds by Honeycutt*, 96 S.W.3d at 89. This discretion has been codified in section 56.087,[5] which provides that the prosecutor "has the power, in his or her discretion, to dismiss a complaint, information, or

---

[5] Unless otherwise indicated, all statutory references are to RSMo Supp. 2013.

indictment, or any count or counts thereof" without the consent of the court. Unless double jeopardy has attached, a dismissal by the prosecutor will be without prejudice, meaning the prosecutor "has complete discretion to refile the case, as long as it is refiled within the time specified by the applicable statute of limitations." *Id.* "Once a prosecutor dismisses a case without prejudice, a court . . . has no authority to convert the dismissal to one with prejudice or to force the prosecutor to trial." *Honeycutt*, 96 S.W.3d at 89. The prosecutor's broad discretion allows the prosecutor to file a *nolle prosequi* following an unfavorable evidentiary ruling and then refile the charges. *Clinch*, 335 S.W.3d at 583-84; *State v. Pippenger*, 741 S.W.2d 710, 712 (Mo. App. 1987).

The prosecutor's dismissal of Mr. Sisco's case came after the trial court sustained Mr. Sisco's motion to exclude the state's new fingerprint evidence and denied the state's subsequent request for a continuance based on that ruling. Because double jeopardy had not attached,[6] the dismissal was without prejudice, and the prosecutor could refile the charges against Mr. Sisco. *See* section 56.087. The trial court did not have authority to convert the dismissal to one with prejudice. *See Honeycutt*, 96 S.W.3d at 89.

Mr. Sisco, nevertheless, argues that, under *State ex rel. St. Charles County v. Cunningham*, 401 S.W.3d 493 (Mo. banc 2013), a *nolle prosequi* cannot be used to avoid an unfavorable ruling. In *Cunningham*, this Court ruled that a plaintiff could not voluntarily dismiss a civil action on remand after this Court reversed the trial court's summary judgment in favor of the plaintiff. *Id.* at 496-97. The Court concluded that

---

[6] Section 56.087.4 prescribes that, for purposes of the statute, double jeopardy attaches when the jury has been empaneled and sworn in a jury trial and when the court begins to hear evidence in a court-tried case.

8

Rule 67.02(a)(2), which permits a plaintiff to dismiss a civil action in a court-tried case without order of the court prior to the introduction of evidence at trial, did not allow a plaintiff to dismiss the action after evidence was presented at hearing on a motion for summary judgment. *Id.* at 496.

Mr. Sisco's reliance on *Cunningham* is misplaced. Unlike *Cunningham*, this case is criminal, and the dismissal was pursuant to section 56.087, not Rule 67.02. Additionally, *Cunningham* involved an attempt to dismiss a case after a "trial" and an appellate court decision, which are not the circumstances of this case.

Lastly, Mr. Sisco asserts that allowing a prosecutor to dismiss a case without prejudice violates the Sixth Amendment under *Klopfer v. North Carolina*, 386 U.S. 213 (1967), because it would allow a case to go on indefinitely. In *Klopfer*, the United States Supreme Court found North Carolina's *nolle prosequi* procedure to violate a defendant's right to a speedy trial when the indictment against the defendant remained pending indefinitely.[7] *Id.* at 221-22. While he raised a speedy trial claim in the trial court based on the particular facts of his case, Mr. Sisco never argued to the trial court that Missouri's *nolle prosequi* procedure under section 56.087 is unconstitutional. This new argument is distinct from the argument Mr. Sisco raised to the trial court and, therefore, is not preserved for review. *See State v. Liberty*, 370 S.W.3d 537, 546 (Mo. banc 2012).

---

[7] Courts have distinguished Missouri's *nolle prosequi* procedure from the one in *Klopfer* because, in Missouri, the indictment is dismissed and not indefinitely pending. *See State v. Morton*, 444 S.W.2d 420, 425 (Mo. 1969); *State v. Ferdinand*, 371 S.W.3d 844, 852 (Mo. App. 2012).

9

Under section 56.087, the *nolle prosequi* in this case was designated a dismissal without prejudice properly because double jeopardy had not attached. The trial court did not err in not converting it to a dismissal with prejudice because the court had no authority to do so. *Honeycutt*, 96 S.W.3d at 89.

**Constitutional Right to Speedy Trial Not Violated**

Mr. Sisco further asserts that the trial court erred in overruling his motion to dismiss on the basis of a violation of his right to a speedy trial. He maintains that the three-year delay in bringing his case to trial was a result of the state's repeated continuances made in bad faith despite his assertion of his right to a speedy trial. Mr. Sisco argues that the length of his delay, along with the state's deliberate attempt to delay trial, creates a presumption of prejudice.

This Court has not explicitly articulated the standard of review for a trial court's ruling on a motion to dismiss based on a defendant's constitutional right to a speedy trial. The state urges this Court to review the trial court's ruling for an abuse of discretion. Support for the state's position comes from decisions of the court of appeals that stated, "Appellate courts review a trial court's ruling on a motion to dismiss for abuse of discretion." *State v. Ferdinand*, 371 S.W.3d 844, 850 (Mo. App. 2012) (internal quotation omitted). *See also State v. Mason*, 428 S.W.3d 746, 749 (Mo. App. 2014); *State v. Simino*, 397 S.W.3d 11, 19 (Mo. App. 2013); *State v. Scott*, 348 S.W.3d 788, 794 (Mo. App. 2011); *State v. Loewe*, 756 S.W.2d 177, (Mo. App. 1988). Authority for this statement, however, can be traced to *State v. Collins*, 669 S.W.2d 933, 935 (Mo. banc 1984).

10

*Collins* involved an alleged violation of the statutory right to a speedy trial under section 545.780, RSMo 1978, which set time limits for bringing a defendant to arraignment and trial. *See id.* Section 545.780.5, RSMo 1978, also provided:

> If the defendant is not brought to arraignment or trial within the time limit required by this section, the trial judge may dismiss the information or indictment upon motion by the defendant and a showing by defendant that the failure to have the trial commence within time limits specified herein was occasioned by the state. *The case may be dismissed with or without prejudice at the discretion of the court.* In determining whether to dismiss the case, the court shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this section and on the administration of justice.

(Emphasis added). According to the express provisions in section 545.780.5, RSMo 1978, a motion to dismiss based on a violation of the statutory right to a speedy trial was reviewed for an abuse of discretion in *Collins*, 669 S.W.2d at 935.

The statute, however, was amended in 1986 to state:

> 1. If defendant announces that he is ready for trial and files a request for a speedy trial, then the court shall set the case for trial as soon as reasonably possible thereafter.

> 2. The provisions of this section shall be enforceable by mandamus. Neither the failure to comply with this section nor the state's failure to prosecute shall be grounds for the dismissal of the indictment or information unless the court also finds that the defendant has been denied his constitutional right to a speedy trial.[8]

Section 545.780, RSMo 2000. The amended statute does not set time limits or provide the trial court with discretion to dismiss a case. *See id.* Instead, it limits dismissal for

---

[8] Section 545.780 was also amended in 1984. The 1984 version of the statute stated only that a court must set the case for trial as soon as reasonably possible if a defendant announces he is ready for trial and files a speedy trial request. Section 545.780, RSMo Supp. 1984.

11

violation of the statute to cases when there is a constitutional violation.[9] *Id.* If there is a violation of a defendant's constitutional right to a speedy trial, the case then *must* be dismissed. *See State ex rel. McKee v. Riley*, 240 S.W.3d 720, 732 (Mo. banc 2007). Therefore, while an abuse of discretion standard was used to review a court's ruling on a motion to dismiss based on the statutory right prior to 1986, it does not necessarily follow that such standard should be utilized today when the motion to dismiss is based on a defendant's constitutional right to a speedy trial.

While this Court defers to the trial court's factual findings and credibility determinations, it reviews questions of law *de novo*. *State v. Werner*, 9 S.W.3d 590, 595 (Mo. banc 2000). This Court reviews *de novo* whether other constitutional rights have been violated. *State v. Schroeder*, 330 S.W.3d 468, 472 (Mo. banc 2011) ("Whether conduct violates the Fourth Amendment is an issue of law that this Court reviews *de novo*."); *Lewellen v. Franklin*, 441 S.W.3d 136, 145 (Mo. banc 2014) (reviewing *de novo* a due process claim); *see also State v. Washington*, 9 S.W.3d 671, 676 (Mo. App. 1999) (reviewing *de novo* whether a defendant's Sixth Amendment right to counsel was violated). Further, a *de novo* review is supported by this Court's speedy trial analyses in other cases in which the Court did not indicate a deferential standard of review and made its own conclusions with regard to whether a violation occurred. *See State v. Taylor*, 298 S.W.3d 482, 504 (Mo. banc 2009); *Owsley*, 959 S.W.2d at 793-94; *State v. Edwards*, 750

---

[9] In addition to his constitutional claim, Mr. Sisco asserts the trial court erred in not dismissing his case because his right to a speedy trial under section 545.780, RSMo 2000, was violated. Because section 545.780, RSMo 2000, authorizes a court to dismiss only if there is a constitutional violation, the statute's application here is contingent on finding a constitutional violation. *See State v. Owsley*, 959 S.W.2d 789, 794 (Mo. banc 1997).

12

S.W.2d 438, 441-42 (Mo. banc 1988); *State v. Bolin*, 643 S.W.2d 806, 813-16 (Mo. banc 1983), *overruled on other grounds by McKee*, 240 S.W.3d at 727 n.10. Accordingly, while the trial court's factual findings are subject to deferential review, this Court will review *de novo* whether Mr. Sisco's Sixth Amendment right to a speedy trial was violated.

The right to a speedy trial is provided by the Sixth Amendment of the United States Constitution and article I, section 18(a) of the Missouri Constitution. *Taylor*, 298 S.W.3d at 504. The federal and Missouri constitutions "provide equivalent protection for a defendant's right to a speedy trial." *Id.* Determining whether a defendant's right to a speedy trial has been violated requires a balancing of four factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant resulting from the delay. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *State ex rel. Garcia v. Goldman*, 316 S.W.3d 907, 911 (Mo. banc 2010). The existence of any one of these factors is neither necessary nor sufficient to finding a deprivation of the right to a speedy trial. *Barker*, 407 U.S. at 533. Rather, "courts must . . . engage in a difficult and sensitive balancing process." *Id.*

*Length of Delay*

The first factor serves two functions. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). First, the length of the delay is a triggering mechanism because, "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors." *Barker*, 407 U.S. at 530. Missouri courts have found a delay of greater than eight months is "presumptively prejudicial." *McKee*, 240 S.W.3d at 729. If a delay

13

was for a period of time that is presumptively prejudicial, courts then consider "the extent to which the delay stretches beyond the bare minimum needed to trigger juridical examination." *Doggett*, 505 U.S. at 652.

The delay in bringing a defendant to trial is measured from the time of a formal indictment or information or when actual restraints are imposed by an arrest. *Garcia*, 316 S.W.3d at 911. Mr. Sisco was arrested and charged on October 20, 2006. His trial began nearly three years later on October 5, 2009. This delay is presumptively prejudicial. Therefore, the Court must consider whether a delay extending 27 and one-half months beyond the presumptively prejudicial threshold violated Mr. Sisco's right to a speedy trial in light of the other factors.

*Reason for Delay*

Different weights are assigned to the different reasons the state provides to justify the delay. *Barker*, 407 U.S. at 531. The United States Supreme Court has provided guidance on how to weigh different reasons for a delay:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Id.* On the other hand, "[d]elays attributable to the defendant weigh heavily against the defendant." *State v. Greenlee*, 327 S.W.3d 602, 612 (Mo. App. 2010) (internal quotation omitted).

14

Based on the schedules of all parties, Mr. Sisco's trial initially was set for August 20, 2007 – 10 months after his arrest. The state was granted its first continuance from that date to December 10, 2007, due to the prosecutor's health.[10] The case was subsequently continued by the court to March 24, 2008, due to docket constraints. It then was transferred to division 18 because the judge in division 10 was placed on special assignment. Division 18 set trial for June 30, 2008. The 10-month delay caused by these continuances is weighed against the state but not heavily because it was due to neutral reasons. *See Barker*, 407 U.S. at 531; *see also State v. Bell*, 66 S.W.3d 157, 164 (Mo. App. 2001).[11]

On June 30, 2008, the state requested and was granted its second continuance to perform DNA testing after Ms. Neal, a key witness for the state, appeared before trial began with counsel and indicated her intent to invoke her Fifth Amendment right against self-incrimination. While the state requested only a one-month continuance, the trial court indicated that it was not available in a month and that a trial date would be set after the parties conferred with their schedules. Before a new trial date was set, the case was

---

[10] Mr. Sisco argues that this continuance was an improper tactical delay because "it occurred on a date when the State was not prepared to make a submissible case." Yet, Mr. Sisco admits that the continuance "may have been for the medical condition of State's counsel," and nothing in the record shows that the state requested this continuance for anything other than medical reasons. The lead prosecutor stated that the continuance was due to a degenerative disc in his back.

[11] The Court examines the reason for each delay separately but it does not consider each period discretely as earlier delays may affect later ones. *See Vermont v. Brillon*, 556 U.S. 81, 94 (2009). The mere fact that an earlier delay may have an effect on later ones does not, however, require this Court to attribute to the state all delays subsequent to the state's first continuance. Such a rule would be contrary to the Supreme Court's flexible approach requiring consideration of all relevant circumstances. *See id.* at 89-90.

15

transferred to division 15 by agreement of the parties because the judge in division 18 was assigned an exclusive domestic docket. Upon Mr. Sisco's request to set a trial date, the court set trial for April 27, 2009.

Delay resulting from the state's performance of DNA analysis is weighed against the state but not heavily. *State v. Davis*, 903 S.W.2d 930, 936 (Mo. App. 1995). Similarly, delay caused by uncooperative witnesses is weighed against the state only slightly. *State v. Atchison*, 258 S.W.3d 914, 919-20 (Mo. App. 2008). Mr. Sisco argues that the delay should weigh more heavily against the state because the state was negligent in not contacting Ms. Neal sooner and in not ordering the DNA testing sooner. The record reflects that the state talked to Ms. Neal over the telephone a week before the June 30th trial date and that, at that time, she gave no indication that she would not testify. Further, because the state was relying on Ms. Neal to place Mr. Sisco at the scene of the crime, it chose not to perform DNA testing until it was clear that such testing would be necessary.[12] The trial court found the state did not act negligently or in bad faith, and this Court gives this finding considerable deference. *See Doggett*, 505 U.S. at 652. Accordingly, the delay resulting from the June 30th continuance is weighed slightly against the state.

Some of the delay during this time, however, was caused by Mr. Sisco's opposition to the state's motion for a buccal swab from Mr. Sisco. The state moved to

---

[12] The state had also sought to identify Mr. Sisco with Ms. Bridge's testimony. At the time of the June 30th trial date, however, the state had been unable to serve her with a subpoena. The state represented to the court that it believed Ms. Bridges, who has two children with Anthony Sisco, intentionally was avoiding being served.

16

compel production of a buccal swab on September 18, 2009, and Mr. Sisco requested and received additional time to respond to the motion. A hearing was not held on the motion until November 25, 2009, and Mr. Sisco did not provide a buccal swab for DNA testing until December 12, 2009. Mr. Sisco had a right to oppose the state's motion, but this Court will consider how his opposition contributed to the delay. *See Owsley*, 959 S.W.2d at 794.

The third delay caused by the state occurred when the state filed a *nolle prosequi* on April 27, 2009, to avoid the trial court's unfavorable ruling excluding fingerprint evidence and its refiling of the case on the same date. As discussed above, the prosecutor was within his authority to file a *nolle prosequi* and refile the charges to avoid the unfavorable ruling. *Clinch*, 335 S.W.3d at 583-84. Nevertheless, the dismissal of Mr. Sisco's charges delayed his case further, and this Court will consider that period of delay and the reason for it in examining Mr. Sisco's speedy trial claim. *See Garcia*, 316 S.W.3d at 911. The state's conduct in dismissing and refiling the case to circumvent the trial court's exclusion of the fingerprint evidence and denial of a continuance was designed to delay trial. Because the state deliberately delayed trial to avoid an adverse ruling, the delay resulting from the state's *nolle prosequi* must be weighed heavily against the state. It should be noted, however, that this is not the type of case discussed in *Doggett*, in which the state "intentionally [holds] back in its prosecution . . . to gain

17

some *impermissible* advantage at trial" because that state had authority to dismiss and refile the case to avoid an unfavorable ruling.[13]  *See* 505 U.S. at 656 (emphasis added).

After the new case against Mr. Sisco was assigned to division 13, trial was set for July 6, 2009, but that trial date was rescheduled after Mr. Sisco filed an amended motion to dismiss on July 2, 2009, alleging that the information filed against him was invalid because he had not waived his right to a preliminary hearing.  On July 10, the state corrected any deficiency by filing an indictment.  Also on July 10, Mr. Sisco filed a motion for a change of judge, which was granted, and, on July 13, he filed a request for discovery, a motion to dismiss and quash the information, a motion *in limine*, and a request for sanctions.  Once again, while this Court does not deny Mr. Sisco's legal right to file these motions and have them adjudicated, the resulting delay is attributable to Mr. Sisco.  *See Owsley*, 959 S.W.2d at 794.

The time between Mr. Sisco's arrest and his actual trial date is approximately three years.  His trial initially was not scheduled to begin until 10 months after his arrest, and Mr. Sisco made no objection to that date.  The next 10 months of delay was caused by the

---

[13] Mr. Sisco argues the state acted in bad faith and relies heavily on statements made by the trial court during the hearing on the motion *in limine*.  The trial court stated, "I can't get over the fact that we're sitting here two days before trial and just now getting reports and indications that there is now a match of a fingerprint on a piece of evidence at the location of this homicide. . . .  I'm extremely, extremely troubled by this new evidence related to the fingerprint.  It just doesn't pass the smell test."  A complete reading of the transcript reveals that the trial court was more concerned about the lack of time Mr. Sisco would have to counter the evidence than about any wrongdoing on the part of the state.  The court went on to state, "And I don't mean to cast dispersions [sic] on anybody.  It's just this coming to light essentially two days before trial of this cause concerns me a great deal, because I think it precludes . . . Mr. Sisco from in any way being able to challenge that . . ..  And, again, I don't think that it is – of course, it isn't a case of non-disclosure, but a case more of the timing of disclosure of the evidence."

18

prosecutor's health issues and the court's docket and is weighed slightly against the state. Next, a 10-month delay followed the prosecutor's requested continuance so that it could conduct DNA testing when Ms. Neal appeared at trial with her counsel and asserted her Fifth Amendment right not to incriminate herself. Though most of this delay is weighed slightly against the state, some of it was caused by Mr. Sisco's refusal to provide a buccal swab and by his request for additional time to respond to the state's motion to compel production.

The case then was delayed for 70 days due to the state's filing of a *nolle prosequi* and refiling of the charges, which is weighed heavily against the state. The remaining three months of delay, however, are attributed to Mr. Sisco.[14]

### Assertion of Right to Trial

The third factor to be considered is whether and how the defendant asserted his right to a speedy trial. *Barker*, 407 U.S. at 531. There is no rigid requirement regarding

---

[14] Mr. Sisco argues that all of this delay should weigh heavily against the state. He contends the state's waiting nearly two years after the crime to perform DNA testing was an improper strategic decision. In hindsight, it may have been more expeditious to perform DNA testing earlier, but this Court does not find any bad faith in the state's failure to do so until it discovered the witness who had identified Mr. Sisco as being at the scene of the crime indicated her intent to invoke her Fifth Amendment privilege. Mr. Sisco also accuses the state of withholding exculpatory evidence and violating discovery rules by not responding to discovery requests. Yet Mr. Sisco raises no claim on appeal that the trial court erred in not assessing discovery sanctions against the state or show that any information was not available to Mr. Sisco by the time of trial. Further, it does not appear any of the alleged withholding of evidence resulted in prejudice. For example, he argues the state waited until five days before the April 17, 2009 trial date to disclose 150 hours of surveillance footage, which he claims shows the victims threatened him with assault rifles on the night of the crime. Despite having the surveillance footage nearly six months before his actual trial, Mr. Sisco asserted a misidentification defense, rather than a self-defense defense.

when a defendant must assert his right to a speedy trial. *Id.* at 527-28. Instead, courts will weigh the timeliness of the assertion and the frequency and force of a defendant's objections. *Id.* at 529.

Mr. Sisco first asserted his right to a speedy trial on June 30, 2008, 20 months after he was arrested and charged, when the state requested a continuance to perform DNA testing after Ms. Neal asserted her Fifth Amendment rights. Before the state dismissed the case on April 27, 2009, Mr. Sisco objected to the state's requested continuance because he was ready for trial and had a right to a speedy trial. He again asserted his right to a speedy trial through oral and written requests for a speedy trial in May 2009 and in motions to dismiss based on a violation of his right to a speedy trial filed in June and July of 2009. Mr. Sisco renewed his motion to dismiss during trial and in his motion for a new trial. Though Mr. Sisco waited almost two years, he asserted his right to a speedy trial several times, which weighs in favor of finding a violation of that right.

### Prejudice to the Defendant

The final factor that must be considered is the prejudice suffered by the defendant as a result of the delay. *Garcia*, 316 S.W.3d at 912. Whether a delay prejudiced the defendant is evaluated in light of three concerns: "(1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; and (3) limitation of the possibility that the defense will be impaired." *Id.* Courts view the third consideration as the most serious. *Id.*

Mr. Sisco was incarcerated for only the first 3 months after his arrest. He was then released on bond. While on bond, Mr. Sisco was electronically monitored and under house arrest. Despite being on house arrest, Mr. Sisco was allowed to go to work. While the restriction on freedom that comes with being electronically monitored and under house arrest with the exception of work gives rise to actual prejudice, it is less prejudicial than if Mr. Sisco had been incarcerated. Mr. Sisco asserts he experienced anxiety and concern facing the possibility of a first-degree murder conviction. "Undoubtedly, anxiety and concern exist in every criminal case, but that alone does not establish prejudice where, as here, the defendant neither asserts nor shows that the delay weighed particularly heavily on him in specific instances." *Bolin*, 643 S.W.2d at 815 (internal quotations omitted).

As to the third concern, the record does not show that Mr. Sisco's defense was impaired significantly by the delay. He does not identify any witnesses who disappeared or otherwise became unavailable because of the delay, nor does he allege that any evidence was lost. He argues that less delay should be tolerated because his case included eyewitness testimony. The delay may have, in fact, benefitted him because the eyewitnesses who gave statements placing him at the crime scene became less cooperative with the passage of time.

Mr. Sisco also argues that continuing a case multiple times increases the cost of defense because attorneys must prepare for the newly scheduled trials, but he does not allege the continuances in his case caused an increased cost to him. He also contends that the delays enabled the state to bolster its case against him. Mr. Sisco focuses on the

state's continuance to perform DNA testing on a Bluetooth device and on the state's *nolle prosequi* to avoid the ruling excluding fingerprint evidence. This evidence was not used against Mr. Sisco at trial because DNA testing on the Bluetooth device did not positively identify Mr. Sisco and the fingerprint evidence was excluded again after the state refiled the charges. The only actual prejudice in this case is the restriction on Mr. Sisco's freedom that comes with being electronically monitored and under house arrest, and that prejudice is lessened by the fact that Mr. Sisco was able to maintain employment during that time.

Mr. Sisco argues that he is entitled to relief because the length of his delay gives rise to a presumption of prejudice that the state did not rebut by affirmatively proving that he was not prejudiced. While this Court already determined the length of Mr. Sisco's delay was presumptively prejudicial, this determination was for purposes of triggering judicial review. *See Doggett*, 505 U.S. at 651-52. When there is a delay of sufficient length to be presumptively prejudicial, courts then will engage in a balancing of factors, one of which is prejudice. *Barker*, 407 U.S. at 530. Determining a delay is long enough to trigger consideration of other factors does not negate the need for this Court to consider actual prejudice.

Nevertheless, the presumption of prejudice "intensifies over time," and its importance among the other factors increases with the length of the delay. *Doggett*, 505 U.S. at 652, 656. Additionally, no one factor, including actual prejudice, is necessary to find a speedy trial violation. *Barker*, 407 U.S. at 533. Accordingly, courts recognize that "'affirmative proof of particularized prejudice is not essential to every speedy trial

22

claim,' as 'excessive delay presumptively compromises the reliability of trial in ways that neither party can prove or, for that matter, identify.'" *Garcia*, 316 S.W.3d at 913 (quoting *Doggett*, 505 U.S. at 655). In *Doggett*, the Supreme Court held that "[w]hen the Government's negligence . . . causes delay six times as long as that generally sufficient to trigger judicial review and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief." 505 U.S. at 658 (internal citations omitted). This Court relied on *Doggett* to find that a seven-year delay between an indictment and arrest caused by the government's negligence violated the defendant's right to speedy trial when four witnesses to the crime had disappeared during that time and the state had not proven affirmatively that the delay left the defendant's ability to defend himself unimpaired. *Garcia*, 316 S.W.3d at 913.

*Doggett* and *Garcia* both involved a lengthy delay between the indictment and arrest, a time period during which delay is particularly likely to result in prejudice that an accused may be unable to prove or identify because the accused may be unaware of the charges. *See Doggett*, 505 U.S. at 652; *Garcia*, 316 S.W.3d at 914. The three-year delay between Mr. Sisco's arrest and trial does not rise to the same level of seriousness as the delays in those cases. Further, the presumption of prejudice in this case was attenuated by Mr. Sisco's acquiescence in the delay until June 30, 2008, and by the time spent adjudicating the numerous motions Mr. Sisco filed in July 2009. The only delay caused by the state and to which Mr. Sisco did not acquiesce was from June 30, 2008, to July 6, 2009. Part of this delay, however, can be attributed to the case being transferred to

23

division 15 by agreement of the parties and by Mr. Sisco's request for additional time to respond to the state's motion to compel. Accordingly, Mr. Sisco is not entitled to relief by merely relying on the presumption of prejudice.

The length of the delay in this case, as well as the state's use of a *nolle prosequi* to avoid an adverse ruling, is concerning. Nevertheless, the state requested only three continuances during the three-year delay, two of which were granted by the trial court and one it obtained by filing the *nolle prosequi*. Importantly, the delay caused by the *nolle prosequi* that weighed heavily against the state was only 70 days. Most of the three-year delay was caused by neutral reasons, and Mr. Sisco waited 20 months to assert his right to a speedy trial. Moreover, the actual prejudice Mr. Sisco suffered by the delay was minimal. When balancing all the factors, the presumption of prejudice in this case is outweighed. Therefore, this Court finds Mr. Sisco's right to a speedy trial was not violated.

## Conclusion

The trial court did not err in not designating the state's *nolle prosequi* as a dismissal with prejudice because the court did not have authority to do so. Additionally, because Mr. Sisco's right to a speedy trial was not violated, the trial court did not err in overruling his motion to dismiss. The trial court's judgment is affirmed.

_____
PATRICIA BRECKENRIDGE, JUDGE

Russell, C.J., Fischer, Draper,
Wilson, and Teitelman, JJ., concur.
Stith, J., dissents.

24