

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | **WD86048** |
| v. | ) | |
| | ) | **OPINION FILED:** |
| | ) | **February 27, 2024** |
| AMADEO D. GWIN, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Jon E. Beetem, Judge**

**Before Division Two:** Anthony Rex Gabbert, Presiding Judge, and
Karen King Mitchell and Janet Sutton, Judges

Amadeo Gwin appeals from the judgment entered following a jury trial in which

he was found guilty of first-degree assault, § 565.050,[1] attempted disarming of a police

officer, § 575.153, resisting arrest, § 575.150, attempted unlawful possession of a

firearm, § 571.070, and interfering with a lawful detention or stop, § 575.150.  Gwin

raises two points on appeal.  He claims the trial court erred (1) in denying his motion to

dismiss for violation of his right to a speedy trial and (2) in allowing the State to

---

[1] All statutory references are to the Revised Statutes of Missouri, Cum. Supp.
2020.

cross-examine him about specific details of his prior convictions.[2]  Finding no error, we affirm.

## Background[3]

On October 5, 2022, the State filed a first amended information charging Gwin, an alleged prior and persistent offender, with one count each of first-degree assault, attempted disarming of a police officer, resisting arrest, attempted unlawful possession of a firearm, and interfering with a lawful detention or stop.[4]

At trial, the following evidence was adduced.  On May 26, 2021, Jefferson City police received a call regarding a possible weapons offense near Broadway Street. Officers S.S. and E.L. responded, parking a couple of blocks away and approaching on foot.  They saw four men:  one (D.D.) in the front passenger seat of a parked vehicle and three others standing nearby.  When a patrol car passed, D.D. appeared to place something under the passenger seat; all four men then moved quickly away from the vehicle.

Based on the nature of the call, the location of the vehicle, and the men's movements, Officer S.S. believed that D.D. had placed a firearm under the seat.  Officer S.S., who was in uniform, identified himself as a police officer and ordered the men to

---

[2] Gwin does not challenge the sufficiency of the evidence supporting his convictions.

[3] "We view the evidence in the light most favorable to the verdicts." *State v. Shade*, 657 S.W.3d 282, 287 n.2 (Mo. App. W.D. 2022).  "To the extent we set forth evidence that is not favorable to the verdicts, we do so for context or because it is relevant to [Gwin's] arguments on appeal." *Id.*

[4] The procedural history of this case is discussed below in our analysis of Gwin's first point on appeal.

stop, but they refused and, instead, shouted obscenities at the officers. Officer E.L. caught up with one of the men (M.S.) and spoke with him. Officer S.S. continued to follow the other three men, asking them to stop so he could talk to them. Officer S.S. radioed for backup to cut the men off but, when another patrol car arrived, the men walked past it. Eventually, one of the three men (D.C.) stopped and spoke with a sergeant who had arrived at the scene. Gwin and D.D. continued walking.

Three or four minutes later, Officer S.S. caught up to Gwin and D.D. and grabbed them by the shoulders, telling them, "I need you to stop." Gwin shrugged his shoulder to remove Officer S.S.'s hand, but the officer's other hand remained on D.D. At that point, Officer S.S. recognized Gwin, addressed him by name, and told him to calm down so they could talk. Gwin swore at Officer S.S. and tried to push him away. Officer S.S. still had a hand on D.D., so Gwin grabbed Officer S.S. and tried to separate him from D.D. Gwin then caused Officer S.S. to fall on his back, and Gwin straddled him and punched him in the chest. During the struggle, Gwin tried to remove Officer S.S.'s gun from its holster. Officer E.L. eventually pulled Gwin off of Officer S.S. Officer S.S. then grabbed Gwin's arm, but he continued to struggle. Ultimately, it took three officers to subdue Gwin. Officer S.S. suffered minor injuries as a result of the altercation with Gwin.

Gwin testified that he and others were outside his grandmother's house on Broadway when the officers approached. Officer S.S. came "directly at" Gwin who walked away. When Officer S.S. caught up to Gwin and D.D., Officer S.S. "grabbed [them] by [their] necks." When Gwin told Officer S.S. that he did not want to talk,

3

Officer S.S. "tried to tackle [Gwin] from behind," and the two men fell to the ground. Gwin denied hurting Officer S.S. but admitted holding him down or standing over him and asking, "Why do you keep putting your hands on me." Gwin then heard someone say, "[G]et on the ground before they kill you," and he lie down with his hands behind his back. According to Gwin, he did not resist arrest, but Officer S.S. was aggressive toward him just as he had been during past encounters with Gwin.

The jury convicted Gwin on all counts. The court found Gwin to be "a prior and persistent felony offender" and sentenced him to twelve years for assault and seven years each for attempted disarming, resisting arrest, and attempted unlawful possession of a firearm, with all sentences to run concurrently. The court also sentenced Gwin to a year in the county jail for interfering with a lawful detention or stop. Gwin filed a motion for new trial in which he argued, among other things, that the trial court erred in overruling his motion to dismiss on speedy trial grounds and in allowing the State to cross-examine him about specific details of his prior convictions. The court denied his new trial motion, and this appeal follows. Additional facts will be provided in the analysis, as necessary, to address Gwin's points on appeal.

**Analysis**

Gwin raises two points, which we address in turn. He claims the trial court erred (1) in overruling his motion to dismiss on speedy trial grounds and (2) in allowing the State to cross-examine him about specific details of his prior convictions.

4

**Speedy Trial**

## A. Background Facts

The following procedural history is relevant to Gwin's speedy trial claim:

- May 27, 2021 - felony complaint filed in Case No. 21AC-CR01153 regarding the May 26, 2021 incident;

- May 28, 2021 - Gwin arrested;

- June 24, 2021 - Preliminary hearing scheduled but continued to June 25, 2021, because Public Defender's Office had a "conflict for representation" and the case was transferred to the Special Public Defender;

- June 25, 2021 - Case continued to June 28, 2021, for a counsel status hearing because Special Public Defender has not yet entered an appearance;

- June 28, 2021 - Special Public Defender entered his appearance, and case continued to July 6, 2021, "for counsel status";[5]

- July 19, 2021 - motion for speedy trial filed;

- July 28, 2021 - indictment for the same charges filed in Case No. 21AC-CR01153-01;

- July 29, 2021 - motions for speedy trial and change of judge filed by Gwin; motion for change of judge granted on July 30, 2021, and new judge assigned on August 16, 2021;

- August 30, 2021 - arraignment hearing continued at Gwin's request to September 14, 2021, and speedy trial request renewed;

- September 7, 2021 - motion to suppress evidence filed;

- September 14, 2021 - revised motion to suppress filed; jury trial set for October 14-15, 2021;

- September 30, 2021 - suppression hearing held; parties agreed to continuance for additional discovery; trial scheduled for January 27-28, 2022, with pre-trial conference set for January 3, 2022;

---

[5] On July 6, the court scheduled the preliminary hearing for August 12, 2021.

- December 7, 2021 - motion to suppress granted;

- January 3, 2022 - *nolle prosequi* filed by the State;[6]

- May 13, 2022 - complaint filed in Case No. 22AC-CR00950 regarding the May 26, 2021 incident;

- May 16, 2022 - Gwin arrested;

- May 19, 2022 - motion to dismiss on speedy trial grounds filed, citing State's bad faith dismissal and refiling of the case;

- May 26, 2022 - information filed (same charges) in Case No. 22AC-CR00950-01;

- May 31, 2022 - motion for change of judge filed by Gwin; motion granted on June 3, 2022, and new judge assigned on June 13, 2022;

- June 21, 2022 - motion to dismiss on speedy trial grounds filed, citing State's bad faith dismissal and refiling;

- July 15, 2022 - motion to dismiss on speedy trial grounds is heard and denied; court and parties agreed to new trial date of October 18, 2022;

- August 22, 2022 - motion to suppress filed;

- August 24, 2022 - suppression hearing set for September 22, 2022;

- September 22, 2022 - suppression hearing continued at State's request due to unavailability of witness; Gwin objected to continuance;

- October 4, 2022 - pre-trial conference held; suppression hearing set for October 13, 2022;

- October 5, 2022 - first amended information filed;

---

[6] "A *nolle prosequi* is a prosecutor's formal entry on the record indicating that he or she will no longer prosecute a pending criminal charge. It results in a dismissal without prejudice unless jeopardy attaches to bar subsequent prosecution." *State v. James*, 552 S.W.3d 590, 594 n.3 (Mo. App. W.D. 2018) (quoting *State v. Buchli*, 152 S.W.3d 289, 307 (Mo. App. W.D. 2004)).

- October 13, 2022 - motion to suppress heard and denied; trial reset to October 21, 2022, because State's witness unavailable; M.S. (co-defendant) endorsed as defense witness;

- October 20, 2022 - order cancelling October 21, 2022 trial because M.S.'s trial had run longer than anticipated; Gwin objected to continuance;

- October 25, 2022 - trial reset for November 3, 2022;

- November 1, 2022 - renewed motion to dismiss on speedy trial grounds filed; that motion was denied on November 2, 2022; and

- November 3-4, 2022 - trial held.

## B. Standard of Review

"The right to a speedy trial is guaranteed by both the Sixth Amendment to the United States Constitution and Article I of the Missouri Constitution." *State v. Vickers*, 560 S.W.3d 3, 14 (Mo. App. W.D. 2018) (quoting *State v. Fisher*, 509 S.W.3d 747, 751 (Mo. App. W.D. 2016)). "The federal and Missouri constitutions provide equivalent protection for a defendant's right to a speedy trial." *State v. James*, 552 S.W.3d 590, 597 (Mo. App. W.D. 2018) (quoting *State v. Sisco*, 458 S.W.3d 304, 313 (Mo. banc 2015)). "The issue of whether the [d]efendant's Sixth Amendment rights have been violated is a question of law, and therefore, appellate courts review de novo." *Vickers*, 560 S.W.3d at 14 (quoting *Fisher*, 509 S.W.3d at 751). However, "we defer to the trial court's findings of fact." *Id.* (quoting *Fisher*, 509 S.W.3d at 751).

## C. The trial court did not err in denying Gwin's renewed motion to dismiss on speedy trial grounds.

"Determining whether a defendant's right to a speedy trial has been violated requires a balancing of four factors: (1) the length of delay; (2) the reason for the delay;

(3) the defendant's assertion of his right; and (4) the prejudice to the defendant resulting from the delay." *James*, 552 S.W.3d at 597 (quoting *Sisco*, 458 S.W.3d at 313). "None of the four factors is a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial; rather, they are related factors and must be considered together." *Id.* (quoting *Sisco*, 458 S.W.3d at 313).

The first factor is the length of the delay in bringing the defendant to trial, which "is measured from the time of a formal indictment or information or when actual restraints are imposed by an arrest." *Sisco*, 458 S.W.3d at 313. "[T]he length of the delay . . . triggers the need to determine whether a defendant's right to a speedy trial has been violated, because unless there is a delay that is presumptively prejudicial, the appellate court need not consider the other three factors." *Id.* "Missouri courts have found that a delay of more than eight months is presumptively prejudicial." *James*, 552 S.W.3d at 598.

"In determining whether delays are presumptively prejudicial, delays 'attributable to the defendant's continuances, motions, or other actions must first be subtracted from the total delay.'" *State v. Carl*, 389 S.W.3d 276, 283 (Mo. App. W.D. 2013) (quoting *State v. Davis*, 903 S.W.2d 930, 936 (Mo. App. W.D. 1995) (After subtracting delays attributable to the defendant, "the total delay period computes to only seven months, which falls one month short of presumptive prejudice.").

Gwin was arrested on May 28, 2021, and his trial began November 3, 2022, 17 months and six days (a total of 524 days) later. But several of the delays are attributable to Gwin, and we subtract those delays for purposes of discerning the total

8

length of delay. The delays attributable to Gwin include the 13 days between June 24, 2021, and July 6, 2021, relating to Gwin's securement of counsel;[7] the 18 days between July 29, 2021, and August 16, 2021, stemming from Gwin's request for a change of judge; the 15 days between August 30, 2021, and September 14, 2021, arising from his request to continue his arraignment; and the 13 days between May 31, 2022, and June 13, 2022, stemming from his second request for a change of judge.[8] The parties jointly requested a continuance from October 14, 2021, to January 27, 2022, to conduct additional discovery. We subtract those 105 days from the total, as well. *See State v. Oliver*, 655 S.W.3d 407, 416 (Mo. App. E.D. 2022) ("We then subtract any delays attributable to Defendant, such as the three joint continuances."). Thus, the delays attributable to Gwin total 164 days.

Further, "[t]he law is well settled that 'the period between the voluntary dismissal of . . . charges and their re-filing does not count in determining Sixth Amendment speedy trial violations.'" *State v. Ferdinand*, 371 S.W.3d 844, 852 (Mo. App. W.D. 2012), *abrogated on other grounds by Sisco*, 458 S.W.3d at 311-13 (quoting *State v. Buchli*, 152

---

[7] On June 28, a Special Public Defender entered his appearance, and the case was continued to July 6, 2021, "for counsel status." On July 6, the court scheduled the preliminary hearing for August 12, 2021. The 13 days between June 24, 2021 (the original date set for the preliminary hearing) and July 6, 2021 (the date of the counsel status hearing following the Special Public Defender's entry of appearance) are fairly attributed to Gwin. But we reject the State's argument that the remaining days from July 6, 2021, to August 12, 2021 (the date the preliminary hearing was held) should be attributed to Gwin because the record does not indicate the reason for the additional continuance from July 6 to August 12.

[8] This may not be an exhaustive list of all the delays attributable to Gwin, but this list is sufficient for purposes of our analysis.

S.W.3d 289, 308 (Mo. App. W.D. 2004)). *See also State v. Anderson*, 687 S.W.2d 643, 647 (Mo. App. W.D. 1985) ("[T]he period between the dismissal of the first indictment and defendant's rearraignment on the same charges does not count in determining Sixth Amendment speedy trial violations.").[9] Underlying Gwin's assertion is that the prosecutor acted in bad faith in dismissing the charges and refiling after the court granted his motion to suppress. But, our Supreme Court has held that "[t]he prosecutor's broad discretion allows [him or her] to file a *nolle prosequi* following an unfavorable evidentiary ruling and then refile the charges." *Sisco*, 458 S.W.3d at 310. Here, it is undisputed that the charges against Gwin were not pending between the *nolle prosequi* and the filing of the second complaint. Thus, we also subtract the 133 days between the *nolle prosequi* (January 3, 2022) and Gwin's second arrest (May 16, 2022) for purposes of discerning the total delay.[10]

_____

[9] The basis for this is the United States Supreme Court's opinion in *United States v. MacDonald*, 456 U.S. 1, 8-9 (1982), wherein the Court stated, "Once charges are dismissed, the speedy trial guarantee is no longer applicable.[] At that point, the formerly accused is, at most, in the same position as any other subject of a criminal investigation."

[10] In some cases, our courts have considered delays attributable to the State's voluntary dismissal of criminal cases in evaluating claims of speedy trial violations. *See, e.g.*, *State v. Sisco*, 458 S.W.3d 304, 315 (Mo. banc 2015); *State v. James*, 552 S.W.3d 590, 598 (Mo. App. W.D. 2018); *State v. Davis*, 607 S.W.3d 795, 801 (Mo. App. W.D. 2020). But the delays considered in those cases were not the time between the voluntary dismissal and the refiling; instead, the delays considered were those inherent in restarting the prosecution once the second case was filed. None of those cases involved the issue here: whether to include the time between the filing of the *nolle prosequi* or voluntary dismissal and filing of the second case for purposes of a speedy trial analysis. Missouri courts have clearly stated that period is excluded when discerning the total delay. *E.g.*, *State v. Oliver*, 655 S.W.3d 407, 416 (Mo. App. E.D. 2022).

After subtracting the 164 days of delay attributable to Gwin and the 133 days between the State's voluntary dismissal and refiling of the charges, the new total delay is 227 days or seven and a half months.

"If the length of the delay is not presumptively prejudicial, . . . we deem no rights to have been violated and need not inquire into the other three factors." *Carl*, 389 S.W.3d at 283. Here, there is no presumption of prejudice because, after subtracting the delays attributable to Gwin and the time between the filing of the *nolle prosequi* and the second complaint, the total delay relevant to Gwin's speedy trial claim is less than eight months. Because that delay is not presumptively prejudicial, we need not consider the remaining three speedy trial factors.

Point I is denied.

### Cross-Examination about Prior Convictions

### A. Background Facts

On direct examination, Gwin acknowledged that he had been convicted of the following offenses in Missouri: (1) a misdemeanor in Cole County in 2019; (2) a misdemeanor in Callaway County in 2017; (3) a misdemeanor in Cole County in 2015; (4) two felonies in Cole County in 2011; and (5) a felony in Cole County in 2010. He also acknowledged that he had been convicted of a couple of misdemeanors in Champaign, Illinois, in 2010.

On cross-examination, the State inquired as follows:

[Prosecutor]: Mr. Gwin, it is your testimony that Officer [S.S.] in your mind is an aggressive officer?

11

[Gwin]: Towards me. I can't speak on anybody else's altercation. Towards me.

[Prosecutor]: He is aggressive towards you?

[Gwin]: Yes.

[Prosecutor]: But you pled guilty to a resisting arrest involving Officer [S.S.] back in the event that happened in 2018, you pled guilty in 2019—

[Gwin]: Yes.

[Prosecutor]: —to that resisting arrest?

[Gwin]: Yes, I did.

[Prosecutor]: And, in fact, you pled guilty to another resisting arrest in Callaway County in 2017?

[Gwin]: Yes, I did.

[Prosecutor]: And, in fact, you pled guilty to another resisting arrest in Champaign, Illinois back in 2010?

[Gwin]: Yes, I did.

[Prosecutor]: And except for those, you've also pled guilty to property damage in Champaign[,] Illinois, right?

[Defense counsel]: Objection. May we approach?

[Court]: Okay.

The following sidebar occurred:

[Defense counsel]: Your Honor, we've already gone through his criminal history. We've already gone through his criminal history. This is effectively asked and answered and beyond the scope of asking for purposes of impeachment. He is wanting to delve into the specifics of his prior criminal history as opposed to just the straight up facts of his criminal history which I believe we've already covered.

[Prosecutor]: I get to—

[Court]: He is correct.

Back in open court, the State continued as follows:

> [Prosecutor]: In fact, you pled guilty to property damage back in Champaign, Illinois in 2010, didn't you?
>
> [Gwin]: Yes, sir.
>
> [Prosecutor]: And among the other things that you pled guilty to were domestic assault in Cole County—
>
> [Gwin]: Yes, sir.
>
> [Prosecutor]: —back in 2011?
>
> [Gwin]: Yes, sir.
>
> [Prosecutor]: And a burglary felony in Cole County back in 2011?
>
> [Gwin]: Yes, sir.
>
> [Prosecutor]: And another domestic assault felony in Cole County in 2010?
>
> [Gwin]: Yes, sir.
>
> [Prosecutor]: And so [Officer S.S.] is the aggressive officer?
>
> [Gwin]: Yes, sir.

Gwin's counsel did not object further to this line of questioning. On appeal, Gwin also asserts trial court error in connection with the following remark by the State during its closing argument:

> In this case [Gwin], the violent man that he is, who knew Officer [S.S.], who had already assaulted Officer [S.S.] earlier in a misdemeanor case, that man said, "No, I'm not having any of this. I'm not stopping. I'm not identifying myself to anybody. I'm not talking to anybody about anything." [Gwin] just kept going.

Gwin's counsel did not object to this remark at trial. On appeal, Gwin claims the trial court impermissibly allowed the State to question him about the specific nature of his prior convictions.

13

## B. Preservation and Standard of Review

The State contends that Gwin's second point was not properly preserved because the error he now alleges—allowing the State to question him about the aggressive nature of his prior convictions—differs from the error he alleged in his trial objection and motion for new trial—allowing the State to ask him about the specific details of those convictions. Gwin replies that the error he raises on appeal is the same error he objected to and raised in his new trial motion: allowing the State to cross-examine him about the specific details of his prior convictions.[11]

Taking Gwin at his word that his second point pertains to the State's questions about the specific nature of his prior convictions, his point is not properly preserved. Gwin's sole objection came only after a question about his prior conviction for property damage; questions about his 2019, 2017, and 2010 convictions for resisting arrest had already been asked and answered. "In such cases, where an objection is made after the testimony has already been given, the objection comes too late." *State v. Gott*, 523 S.W.3d 572, 581 n.7 (Mo. App. S.D. 2017) (quoting *State v. Delgado*, 774 S.W.2d 549, 551 (Mo. App. S.D. 1989)). *See also Church v. CNH Indus. Am., LLC*, 671 S.W.3d 829, 841 (Mo. App. W.D. 2023) ("Under Missouri law, objections must be made at the earliest possible opportunity, and a failure to object constitutes waiver of the claim on appeal.") (quoting *State v. Jones*, 637 S.W.3d 526, 535 (Mo. App. W.D. 2021)). Moreover, Gwin

---

[11] In his reply brief, Gwin explains that he complained about the State's cross-examination question related to whether Officer S.S. is aggressive simply to demonstrate the prejudice that resulted from the court overruling Gwin's trial objection to questions about the specific nature of his prior offenses.

did not repeat his objection or request a continuing objection when the State resumed questioning him about his prior convictions, nor did he object to the prosecutor's closing remark about his violent nature. Where no timely objection was raised, our review is for plain error only. *Gott*, 523 S.W.3d at 581.

"Under plain error review, we must determine whether the alleged error is 'evident, obvious, and clear error' [and] 'facially establishes substantial grounds for believing that manifest injustice or a miscarriage of justice' has occurred." *State v. Ratliff*, 622 S.W.3d 736, 745-46 (Mo. App. W.D. 2021) (quoting *State v. Campbell*, 600 S.W.3d 780, 788-89 (Mo. App. W.D. 2020)). "'[T]he defendant bears the burden of demonstrating manifest injustice entitling him to' plain error review." *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020) (quoting *State v. Oates*, 540 S.W.3d 858, 863 (Mo. banc 2018)).

### C. The trial court did not err in allowing the State to cross-examine Gwin about his prior convictions.

"When a defendant chooses to testify, he opens the door to an attack on his credibility by the prosecution through proof of his prior convictions." *State v. Tramble*, 383 S.W.3d 34, 40 (Mo. App. E.D. 2012). "On cross-examination, the State has an absolute right to demonstrate prior convictions and the nature and kind thereof for the purposes of impeachment, limited only by the restriction that the cross-examiner shall not go into details of the crimes leading to prior convictions." *Id.* "The State may inquire into the nature, date, and place of prior convictions and the resulting sentences." *Id.* "In literary terms who, what, when and where are in order but why and how are not." *State v.*

15

*Holden*, 278 S.W.3d 674, 681 (Mo. banc 2009) (quoting *State v. Light*, 871 S.W.2d 59, 63 (Mo. App. E.D. 1994)).

Gwin claims that the State "went into details of [his] prior crimes" and "dwelled on them." We reject that characterization. As reflected in the quoted portions of the transcript, the State merely asked the name of the offense underlying each conviction, the jurisdiction, and the date. The State's questions are permissible as inquiries into "the nature, date, and place of prior convictions," *Tramble*, 383 S.W.3d at 40, or the "what, when and where" of those convictions, *Holden*, 278 S.W.3d at 681.[12] Gwin cites no authority for the proposition that the State may ask about only whether the prior conviction was for a felony or misdemeanor, and we have not found any such authority.[13]

Because Gwin failed to "facially establish[] substantial grounds for believing that manifest injustice or a miscarriage of justice" resulted from the overruling of his objection to the State's cross-examination about his prior convictions, we decline to

---

[12] In its question about Gwin's 2019 conviction for resisting arrest, the State included the fact that Officer S.S. was involved in that case, but the jury had already heard testimony that the 2019 conviction involved Officer S.S. In fact, it is apparent that Gwin's trial strategy was to elicit testimony about Officer S.S.'s prior involvement with Gwin to show that Officer S.S. was targeting Gwin.

[13] Gwin relies heavily on *State v. Stallings*, 406 S.W.3d 499 (Mo. App. W.D. 2013). There, this court concluded that the State's cross-examination of the defendant improperly elicited details of his prior convictions in order to demonstrate his propensity to commit the charged offense. *Id.* at 505-06. *Stallings* is distinguishable. The details elicited in that case were that Stallings's prior convictions involved vehicles taken from dealerships or car rental agencies. *Id.* at 503-04. Here, the State did not ask how Gwin committed the acts underlying his prior convictions nor did the State seek factual details about those convictions. Instead, the State merely asked Gwin to confirm the names of the crimes for which he was convicted. In *Stallings*, there was no challenge to the admissibility of the names of the crimes he previously committed.

16

engage in plain error review of Point II. *Ratliff*, 622 S.W.3d at 745-46 (quoting

*Campbell*, 600 S.W.3d at 788-89). Point II is denied.[14]

## Conclusion

Finding no error, Gwin's convictions are affirmed.

_____
Karen King Mitchell, Judge

Anthony Rex Gabbert, Presiding Judge, and Janet Sutton, Judge, concur.

---

[14] Even if Gwin had properly preserved Point II, we would deny it. "We afford the trial court broad discretion in determining the permissible scope of cross-examination, and will not reverse a criminal conviction absent an abuse of that discretion." *State v. Wren*, 317 S.W.3d 111, 124 (Mo. App. E.D. 2010). The trial court did not abuse its discretion by allowing the State to question Gwin about the name, date, and place of his prior convictions.